DECISION
{¶ 1} Relator, Jane Ameen, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying her application for R.C. 4123.56(B) wage loss compensation beginning August 23, 2000, and to enter a new order granting said compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached, as Appendix A.) The magistrate concluded that relator failed to establish that the commission had abused its discretion and that this court should deny the requested writ.
 {¶ 3} Relator filed an objection to the decision of the magistrate essentially rearguing issues already adequately addressed therein. For the reasons stated in the decision of the magistrate, the objection is overruled.
 {¶ 4} Following independent review, pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Objection overruled; writ denied.
TYACK, P.J., and BROWN, J., concur.
 APPENDIX A IN MANDAMUS {¶ 5} In this original action, relator, Jane Ameen, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her R.C. 4123.56(B) wage loss compensation beginning August 23, 2000, and to enter an order granting wage loss compensation.
Findings of Fact:
 {¶ 6} 1. On August 22, 1997, relator sustained an industrial injury while employed as a registered nurse for respondent Trumbull Memorial Hospital ("Trumbull Memorial"), a self-insured employer under Ohio's workers' compensation laws. Her duties as a registered nurse included that of "transport aide" requiring her to push patients and machinery by cart. Relator's injury occurred while pushing a patient and an IVAC machine up a ramp. Her claim is allowed for: "sprain/strain of the cervical and thoracic spinal areas with myofascitis; disc protrusion at C3-4; aggravation of pre-existing spondylosis at C3-4, C4-5, and C5-6," and is assigned claim number 97-525456. On the date of her injury, relator held an associate degree in science in nursing which she had received in 1971. She had been employed at Trumbull Memorial for 12 years.
 {¶ 7} 2. From approximately December 29, 1997 to April 15, 1998, relator worked either light duty at Trumbull Memorial or received temporary total disability ("TTD") compensation. By letter dated April 15, 1998, Trumbull Memorial informed relator that her employment there had been terminated "[d]ue to your failure to return from an approved Leave of Absence or contact the Nursing Department regarding an extension of your leave."
 {¶ 8} 3. Apparently, relator continued to received TTD compensation beyond her April 15, 1998 termination of employment.
 {¶ 9} 4. On May 16, 2000, relator was examined on behalf of Trumbull Memorial by E.A. DeChellis, D.O. His report, dated July 5, 2000, states:
 {¶ 10} "* * * [I]t is my opinion, based upon a reasonable degree of medical certainty and probability, that this claimant is able to perform her former job duties and tasks as a registered nurse at Trumbull Memorial Hospital with a few restrictions. The only restrictions Ms. Ameen would have would be to refrain from patient transfer. She could adequately perform the job duties of a registered nurse. These would include, but not be limited to, following doctors orders, dispensing medications, charting patients progress, as well as medical decision making within the limits of a registered nurse. Ms. Ameen has extensive training and education in order to secure a license as a registered nurse. This education, training and experience could be put to good use with the only restriction being to refrain from patient transfer activities. In my medical opinion, Ms. Ameen has reached maximum medical improvement for the allowed conditions in this claim. Further therapy should be directed only at maintaining her current level of function. * * *"
 {¶ 11} 5. On July 13, 2000, Trumbull Memorial moved to terminate TTD compensation based upon the July 5, 2000 report of Dr. DeChellis.
 {¶ 12} 6. Following an August 17, 2000 hearing, a district hearing officer ("DHO") issued an order terminating TTD compensation effective the hearing date based upon the July 5, 2000 report of Dr. DeChellis. The DHO's order was administratively affirmed.
 {¶ 13} 7. In the meantime, following her termination of employment at Trumbull Memorial, relator enrolled at Youngstown State University where she received a bachelor of science degree in education in August 2000.
 {¶ 14} 8. On August 23, 2000, relator began employment as a teacher for the Warren City School District.
 {¶ 15} 9. On January 9, 2001, relator moved for so-called working wage loss compensation beginning August 23, 2000. In support, relator submitted a report from her treating chiropractor, Ralph J. Siegenthaler, D.C., stating:
 {¶ 16} "* * * Patient is unable to assume a position in which she has to hold her head in a fixed position as this triggers pain and dizziness. The area of disc protrusion and spondylosis create direct pressure on those nerves which affect the motor and dermatome levels of the neck, upper back, arms and hands. Repititious [sic] movement or irritation will aggravate these areas resulting in pain, numbness and weakness to these areas. Lifting overhead, crouching, turning her head and neck continuously to the side or to look behind her."
 {¶ 17} 10. In further support of her wage loss claim, relator submitted pay records from the Warren City Schools showing that during academic year 2000-2001, relator's bi-weekly gross pay was $944.15.
 {¶ 18} 11. Following an April 19, 2001 hearing, a DHO issued an order denying relator's motion for wage loss compensation. Relator administratively appealed.
 {¶ 19} 12. Following a May 31, 2001 hearing, a staff hearing officer ("SHO") affirmed the DHO's order. Relator administratively appealed.
 {¶ 20} 13. Following an August 1, 2001 hearing before the three member commission, the commission issued an order vacating the SHO's order, but denying the wage loss claim for an additional reason. The commission's order states:
 {¶ 21} "* * * [T]he injured worker's request for working wage loss compensation is denied for the reason that the injured worker did not seek suitable work that was comparably paying to her former position of employment prior to beginning her current career as a teacher with Warren City School District. Rather, the Industrial Commission finds that the injured worker made a conscious lifestyle choice to become an educator, teaching `technology,' and as a result, she voluntarily limited her income. Therefore, the Industrial Commission finds that there is no causal connection between the injured worker's industrial injury and her decreased earnings.
 {¶ 22} "The injured worker had been a registered nurse for 12 years with the instant employer, Trumbull Memorial Hospital, when she was injured on 08/22/1997. Thereafter, she either received temporary total disability compensation, or performed a light duty assignment until her termination from the hospital in April, 1998. The injured worker testified at hearing that she then obtained counseling from the Ohio Bureau of Vocational Rehabilitation and the Private Industry Council and returned to college to obtain a teacher's certificate. Subsequent temporary total disability compensation was terminated on 08/17/2000 due to a finding of maximum medical improvement based on the 07/05/2000 report of Dr. DeChellis. The injured worker testified at hearing that she graduated from college on 08/18/2000. The injured worker testified that after she graduated, she `wrote letters to doctor's offices' seeking employment, sent 40 resumes to different school districts, had one interview with Liberty Schools, and two interviews with Warren City Schools before accepting her current position.
 {¶ 23} "* * *
 {¶ 24} "Here, the Industrial Commission finds that the injured worker did not search for suitable employment which was comparably paying to her former job as nurse. In fact, long before the injured worker was forced to search for work at all following termination of her temporary total disability benefits, she had made a conscious decision that she was going to be a teacher and had therefore enrolled in college in pursuit of that endeavor. (Again, she graduated the day after her temporary total disability compensation was terminated.) In addition, the Industrial Commission does not find persuasive the injured worker's testimony on the issue of her seeking comparably paying work with doctor's offices prior to landing her teaching position. First, if the injured worker had gone to college for the sole reason that she wanted to pursue a teaching career, then it does not follow that once she graduated, she would pursue employment with doctor's offices. Secondly, and most importantly, the injured worker has submitted no documentation to support her testimony that she wrote to doctor's offices seeking employment. Further, the injured worker has submitted no documentation to support her testimony that she sent 40 resumes to various schools for potential teaching positions, and that she had an interview with Liberty Schools before her two interviews and subsequent job offer with Warren Schools. Even if she did, it would still not undermine the Industrial Commission's determination that the injured worker chose to pursue a teaching career independent of her industrial injury. Finally, other than her testimony described above, which the Industrial Commission does not find persuasive, the injured worker has offered no evidence that she sought suitable employment that was comparably paying before she accepted the teaching position at Warren City Schools. Based on the above, the Industrial Commission does not find that the injured worker's decreased earnings are a result of being forced into the lesser-paying teaching field because she could not find suitable work that was comparably paying to her former position of employment. There is simply no evidence to support such a finding. As a result, there is no causal relationship between the injured worker's industrial injury and her wage loss. Therefore, the injured worker's request for working wage loss compensation is denied."
 {¶ 25} 14. On February 4, 2002, relator, Jane Ameen, filed this mandamus action.
Conclusions of Law:
 {¶ 26} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 27} Ohio Adm. Code 4125-1-01 sets forth the commission's rules with respect to the application for and the adjudication of wage loss compensation.
 {¶ 28} Ohio Adm. Code 4125-1-01(A)(7) states:
 {¶ 29} " `Suitable employment' means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim."
 {¶ 30} Ohio Adm. Code 4125-1-01(A)(8) states:
 {¶ 31} " `Comparably paying work' means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment."
 {¶ 32} Ohio Adm. Code 4125-1-01(D)(1)(c) states:
 {¶ 33} "A good faith effort to search for suitable employment which is comparably paying work is required of those seeking non-working wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work. * * * A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. * * *"
 {¶ 34} Here, relator concedes that her average weekly wage is set at $558.57. (Relator's brief at 12.) Relator also concedes that her gross weekly teacher's pay for the period at issue is $472.08. (Id. at 13.) Thus, by definition, under Ohio Adm. Code 4125-1-01(A)(8), relator's teaching job is not comparably paying work because relator was paid $86.49 per week less than her former position of employment as a registered nurse.
 {¶ 35} Under Ohio Adm. Code 4125-1-01(D)(1)(c), as a prerequisite to obtaining wage loss compensation, relator is required to make a good-faith effort to search for comparably paying work unless she can show that she is not qualified for any type of work that is comparable in pay to her former position of employment.
 {¶ 36} Apparently, relator's position on this issue before the commission was that she had made a good-faith effort to search for comparably paying work by writing to doctor's offices seeking employment, as the commission noted in its order. Thus, relator apparently did not contend before the commission that she is not qualified either medically or vocationally for work that is comparable in pay to her former position of employment.
 {¶ 37} While the commission's order does not contain a finding that relator is qualified for comparable paying work, it appears that the wage loss claim was litigated by the parties administratively under the assumption that relator was qualified for employment as a registered nurse at a doctor's office and that such employment would pay comparable to her former position of employment. Otherwise, why would relator testify that she sought employment with doctor's offices?
 {¶ 38} The sole basis for the commission's denial of the wage loss claim was the commission's determination that relator failed to seek suitable work comparable in pay to her former position of employment prior to beginning her career as a teacher. The commission found that relator's decision to accept a teaching job was a lifestyle choice involving a voluntary limitation of her income. The commission found that there was no causal connection between the industrial injury and relator's decreased earnings. The commission reached this determination by rejecting relator's testimony that she wrote to doctor's offices prior to accepting the teaching job.
 {¶ 39} The commission rejected relator's testimony for two reasons, as the order explains:
 {¶ 40} "* * * First, if the injured worker had gone to college for the sole reason that she wanted to pursue a teaching career, then it does not follow that once she graduated, she would pursue employment with doctor's offices. Secondly, and most importantly, the injured worker has submitted no documentation to support her testimony that she wrote to doctor's offices seeking employment. * * *"
 {¶ 41} It is the commission that weighs the evidence. Ordinarily, in mandamus, this court will not reweigh the evidence. Clearly, it was within the commission's fact-finding discretion to reject relator's hearing testimony, and on that basis, reject her claim that she sought comparably paying work. Thus, the commission's denial of the wage loss claim is supported by some evidence and is adequately explained.
 {¶ 42} Relator's reliance upon State ex rel. Brinkman v. Indus. Comm. (1999), 87 Ohio St.3d 171, is misplaced. Brinkman did not involve the issue here of whether the wage loss claimant conducted a search for comparably paying work as required by Ohio Adm. Code 4125-1-01(D)(1)(c).
 {¶ 43} Relator also suggests that the commission should have excused relator from searching for comparably paying work because her teaching wages will increase, thus reducing her wage loss. (Relator's brief at 13.) This suggestion simply ignores the fact that a wage loss claimant who fails to search for comparably paying work has failed to demonstrate a causal relationship between the industrial injury and the wage loss. Moreover, almost all employment involves periodic increases in wages. Under relator's suggestion, acceptance of any employment where wages are expected to increase, would qualify a claimant for working wage loss compensation, regardless of whether acceptance was a lifestyle choice.
 {¶ 44} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.