DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Shamrock Materials, Inc., has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting R.C. 4123.56(B) wage-loss compensation to respondent, Ziyad J. Aleissa ("claimant"), beginning August 4, 2003, and to enter an order denying said compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court issue a writ of mandamus ordering the commission to vacate the January 29, 2004 order of its staff hearing officer ("SHO"), awarding wage-loss compensation, and to enter an order denying such compensation. (Attached as Appendix A.) Both claimant and the commission have filed objections to the magistrate's decision.
 {¶ 3} In his objection, claimant challenges the magistrate's finding that there was a lack of evidence to support the SHO's determination that claimant made a good-faith effort to find comparably paying work. More specifically, claimant argues that the magistrate failed to understand that he drew unemployment compensation for approximately ten months prior to accepting employment at Gold Star Chili.
 {¶ 4} The magistrate, however, addressed this contention, noting that the hearing testimony referenced in the order did not indicate that claimant testified he received unemployment benefits, or that he conducted a job search to support the receipt of unemployment benefits. The magistrate further found that, even assuming claimant received unemployment benefits, and even accepting that claimant testified he conducted a job search during the period he received unemployment benefits, there was no way for the commission to have properly evaluated the adequacy of this job search in the absence of any documentary evidence of a job search. The magistrate also noted that claimant did not even allege he conducted a job search during his employment at Gold Star Chili (where he earned minimum wage), or while subsequently employed at Buffalo Wing Company ("Buffalo Wing") (earning far less than the wages he earned with relator).
 {¶ 5} Under Ohio law, "[t]he mere fact of a job search does not entitle a claimant to wage-loss compensation." State ex rel. Jones v.Kaiser Foundation Hospitals Cleveland (1999), 84 Ohio St.3d 405, 407. Rather, "[t]here is a qualitative component to that job search that must be satisfied — one of adequacy and good faith." Id. The question of adequacy is determined on a case-by-case basis and can include many factors, including "the number and character of job contacts." Id. However, "[a]dequacy cannot be evaluated when a claimant fails to submit any evidence of his or her job contacts." Id.
 {¶ 6} As indicated above, the magistrate considered the issue of unemployment benefits, finding no evidence of claimant receiving unemployment benefits or of a job search relating to unemployment benefits, and the magistrate ultimately found insufficient evidence that a job search was adequate and done in good faith. Upon review, we agree with the magistrate that the record, which contains no wage-loss statements or other supporting documentary evidence, nor references any testimony regarding claimant's efforts to secure employment, does not support the commission's finding that claimant conducted an adequate job search. Accordingly, claimant's objection is not well-taken.
 {¶ 7} In its objection, the commission contends that this court should, "at most," issue a "limited" writ, remanding this matter to the commission for a re-hearing to take into consideration the Ohio Supreme Court's decision in State ex rel. Brinkman v. Indus. Comm. (1999),87 Ohio St.3d 171. In Brinkman, the Supreme Court held that a claimant's acceptance of part-time work did not establish that he had specifically limited his employment, or that his job selection was motivated by a lifestyle change, "the two concerns that have prompted close examination of part-time work." Id. at 174.
 {¶ 8} Under the facts of Brinkman, however, the claimant, in addition to submitting medical evidence, also came forth with "wage statements and job search records in support." Id. at 171. As noted above, such evidence of a good-faith job search is lacking in the instant case, distinguishing it from Brinkman. See State ex rel. Rouweyha v. Indus. Comm. (2002),94 Ohio St.3d 160, 165 (distinguishing Brinkman where claimant failed to present evidence of a good-faith job search). See, also, State ex rel.Carnahan v. Indus. Comm. (1999), 86 Ohio St.3d 67, 69 ("[a] claimant cannot successfully assert that an injury placed him/her at a competitive disadvantage in the job market without fully immersing himself/herself into the job market").
 {¶ 9} The commission contends that claimant's business venture with Buffalo Wing, whereby he began self-employment managing a restaurant under a lease with purchase option, did not constitute an effort by claimant to voluntarily limit his income. The magistrate, however, concluded that "[t]he commission's explanation for granting wage loss compensation fails to justify a finding that the wage differential between relator's wage rate and the wage rate paid by claimant to himself as a restaurant manager is due to the industrial injury." Upon review of the facts of this case, including an absence of any evidence of an adequate job search during this period, or other evidence that claimant's reduction in earnings was causally related to his injury, we agree with the magistrate's determination. Accordingly, the commission's single objection is not well-taken.
 {¶ 10} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration to the objections, we overrule the objections and find that the magistrate sufficiently discussed and determined the issues raised. In accordance with the magistrate's decision, a writ of mandamus is granted ordering the commission to vacate its January 29, 2004 order granting wage-loss compensation, and to enter an order denying such compensation.
Objections overruled; writ granted.
Lazarus and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Shamrock Materials, Inc., :
 Relator, :
v. : No. 04AP-458
Industrial Commission of Ohio : (REGULAR CALENDAR)
and Ziyad J. Aleissa, :
 Respondents. :

 MAGISTRATE'S DECISION Rendered on December 20, 2004 Schottenstein, Zox Dunn, Corey V. Crognale and Meghan M. Majernik,
for relator.
Jim Petro, Attorney General, and Dennis L. Hufstader, for respondent Industrial Commission of Ohio.
Crowley, Ahlers Roth Co., L.P.A., and Edward C. Ahlers, for respondent Ziyad J. Aleissa.
IN MANDAMUS
 {¶ 11} In this original action, relator, Shamrock Materials, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting R.C. 4123.56(B) wage loss compensation to respondent Ziyad J. Aleissa beginning August 4, 2003, and to enter an order denying said compensation.
Findings of Fact:
 {¶ 12} 1. On October 8, 2002, Ziyad J. Aleissa ("claimant") sustained an industrial injury while employed as a front-end loader operator for relator, a state-fund employer. On the date of injury, claimant was paid by relator at an hourly rate of $11.51. The injury occurred during an altercation between claimant and a co-worker. The industrial claim is allowed for: "sprain of neck; contusion of left knee; contusion of left foot; sprain right shoulder; sprain lumbosacral," and is assigned claim number 02-858807.
 {¶ 13} 2. On August 4, 2003, claimant's treating physician, Rod MacGregor, M.D., released claimant to return to work with restrictions. Dr. MacGregor certified that claimant should not lift over 20 pounds at all.
 {¶ 14} 3. Also on August 4, 2003, claimant began full-time employment at Gold Star Chili ("Gold Star") at an hourly rate of $5.15.[1] This job was light duty work within claimant's medical restrictions.
 {¶ 15} 4. On August 28, 2003, claimant filed an application for so-called working wage loss compensation beginning August 4, 2003. In support, claimant submitted Dr. MacGregor's August 4, 2003 release slip and a letter from Gold Star verifying that he began full-time employment there at $5.15 per hour. He also submitted a Gold Star pay stub showing that, for the pay period ending August 9, 2003, he had worked a 40-hour week with gross earnings of $206 ($5.15/hour × 40 = $206).
 {¶ 16} 5. On the wage loss application, claimant certified the following information:
* * * I was recently able to find employment with Gold Star Chili. I have been hired for a light duty type position which mainly will involve cleaning tables, washing dishes etc. My employer is aware of the restrictions set by Dr. MacGregor and has assured me that the work will be within those restrictions. I have been hired at minimum wage, $5.15 per hour for 40 hours per week. On this basis I am requesting payment of working wage loss benefits.
 {¶ 17} 6. With his application or thereafter, claimant did not submit a "wage loss statement" on bureau form C-141 as provided by Ohio Adm. Code 4125-1-01(C)(5). Claimant submitted no other type of documentary evidence showing that he had conducted a job search prior to or after accepting employment at Gold Star.
 {¶ 18} 7. On October 6, 2003, Dr. MacGregor wrote that claimant "should continue with the current restrictions of not lifting more than 20 pounds."
 {¶ 19} 8. On November 6, 2003, claimant was examined by orthopedic surgeon, Edward V.A. Lim, M.D., at relator's request. Dr. Lim wrote:
* * * This patient at this time is capable of full duty work but with restrictions of no lifting in excess of 25 pounds, no working in twisting or working with vibrating equipment. These restrictions most likely will be permanent for him. * * *
 {¶ 20} 9. On October 13, 2003, claimant began full-time employment with Hayride, Inc., d/b/a Buffalo Wing Company ("Buffalo Wing") at $5.25 per hour.
 {¶ 21} 10. Following a December 2, 2003 hearing, a district hearing officer ("DHO") issued an order granting wage loss compensation beginning August 4, 2003. The DHO's order states in part:
The District Hearing Officer finds that the injured worker returned to employment on 08/04/2003 as a cashier, a position which is within the physical restrictions stated by the above physicians.
The District Hearing Officer finds that the injured worker's present earnings are less than his wages were at the time of the industrial injury and that his wage loss is the result of a medical impairment causally related to his 10/08/2002 industrial injury.
The District Hearing Officer finds that the injured worker has otherwise complied with the requirements of the Industrial Commission wage loss rules set forth in O.A.C. Chapter 4125-1.
* * *
This order is based upon the injured worker's testimony, the medical reports set forth above, O.R.C. Section 4123.56(B), O.A.C. Chapter 4125-1, the wage information in file and the evidence adduced at hearing.
 {¶ 22} 11. Relator administratively appealed the DHO's order.
 {¶ 23} 12. The hearing on relator's appeal was noticed for January 29, 2004 before a staff hearing officer ("SHO").
 {¶ 24} 13. The record contains a letter to the commission dated January 27, 2004, from claimant's counsel. The letter states:
* * * I am submitting this letter in advance of such hearing so as to provide updated documentation as to Mr. Aleissa's work activity and as to his attempts to find employment which will provide him with an income comparable to or exceeding the income that he had while working for Shamrock Materials, the employer in this claim.
Mr. Aleissa has over the past several weeks continued to work for the Buffalo Wing Co. in Bethel, Ohio. He continues to work full time at a rate of $5.25 per hour. Payroll documentation for the weeks ending January 4th, January 11th and January 18th is being submitted with this letter. * * *
Mr. Aleissa has been looking for a better paying position or better business opportunity for a number of weeks and will testify as to his efforts in this regard at Thursday's hearing. Recently, Mr. Aleissa became aware that Mr. Haytham David, the owner/operator of the restaurant where he has been working, wanted to disengage himself of the business. Mr. Aleissa therefore approached Mr. David about taking over the business and in this connection Mr. Aleissa entered into a Lease with Purchase Option with Mr. David. A copy of said Lease Agreement is likewise being submitted with this letter.
Mr. Aleissa has been running the restaurant since January 15, 2004, the date that the Lease Agreement became effective. He has a number of people working for him. Mr. Aleissa is paying himself out of the restaurant's gross receipts and it is my understanding that within the past week or so was able to increase his own pay to $6.25 per hour. Mr. Aleissa intends to increase his own pay as business permits. Also, Mr. Aleissa is attempting to secure financing which will allow him to exercise the purchase option. He believes that if he can purchase the business he will be able to substantially increase his income. I anticipate that Mr. Aleissa will testify at further length to these plans.
 {¶ 25} 14. With the January 27, 2004 letter, claimant's counsel submitted the pay stubs regarding claimant's employment with Buffalo Wing. As the letter indicates, the pay stubs show that claimant was working a 40-hour week at $5.25 per hour at Buffalo Wing during January 2004.
 {¶ 26} 15. Also with the January 27, 2004 letter, claimant's counsel submitted a copy of a "lease with purchase option" executed by claimant as lessee and Mr. Haytham David, as lessor.
 {¶ 27} 16. In the meantime, relator requested an employability assessment or vocational report from Craig Johnston, a vocational consultant. The Johnston report, dated December 17, 2003, states in part:
Mr. Aleissa states that he "finished school" in Jordan, although he does not indicate whether this refers to high school or college. His ability to complete an application for employment reflects at least functional literacy, and he has demonstrated through his work activity 4-6th grade reading, and 7-8th grade mathematics and reasoning proficiency. He has engaged in unskilled and semiskilled work activity, and his employment history supports the ability to work in positions requiring above average clerical perception, and average aptitudes of general learning ability, verbal skill, numerical skill, spatial perception, form perception, motor coordination, finger dexterity, manual dexterity, and eye/hand/foot coordination. He has demonstrated temperaments for dealing with people, making judgments and decisions, performing a variety of work tasks, and working to close tolerances. His work activity reflects skills transferable to other related and entry level semiskilled occupations.
Mr. Aleissa possesses the necessary work experience and skills to engage in sustained remunerative employment. His ability to function within the light physical demand range precludes him from returning to his former work activity as a Front End Loader Operator, but does not prevent him from engaging in other work activity. He is currently earning $5.50 per hour as a Cashier for Gold Star Chili. There exist Cashier positions within his labor market that provides higher wages than those earned with Gold Star Chili. There also exist a significant number of occupations that provide wage[s] closely approximating the claimant's former income. Mr. Aleissa possesses the necessary work experience, work skills, and physical capacity to engage in work activity as a general office clerk, file clerk, shipping checker, mail clerk, photo lab helper, sales attendant, parking lot attendant, gate guard, and surveillance system monitor. Engaging in a goodfaith job search, the claimant would be able to obtain and perform these occupations without delay. It is within a reasonable certainty that if Mr. Aleissa were to engage in a good faith job search, he would be able to obtain immediate employment that would provide him wages ranging from $8.00-$12.00 per hour.
 {¶ 28} 17. Following the January 29, 2004 hearing, the SHO issued an order stating:
The order of the District Hearing Officer dated December 2, 2003 is modified to the following extent: The Staff Hearing Officer finds that the injured worker is unable to return to and perform the duties of his former position of employment as a result of the allowed conditions in the claim. The Staff Hearing Officer further finds that the injured worker is capable of performing employment with medical restrictions provided by his treating physician, Dr. MacGregor. Specifically, the injured worker is restricted from lifting or pushing objects in excess of 25 pounds, and should avoid twisting or working with vibrating equipment. The Staff Hearing Officer rejects the employer's argument that the injured worker is capable of performing his former position of employment as a front load operator considering these restrictions. Based on the injured worker's testimony at hearing, the Staff Hearing Officer finds that the injured worker's former position of employment exceeded these restrictions.
The Staff Hearing Officer further finds that the injured worker sought other suitable employment and became employed on August 4, 2003 as a cashier, a position which is within the physical restrictions stated by the injured worker's treating physician. The Staff Hearing Officer finds that the injured worker made a good faith effort to find comparably paying work, but nevertheless suffered a wage loss as a result of returning to the position of cashier.
The injured worker testified at hearing that he subsequently entered into a lease with an option to buy a business and he has continued to perform employment duties related to managing that business. The Staff Hearing Officer finds that such employment is consistent with the medical restrictions due to the allowed conditions in the claim. The Staff Hearing Officer rejects the employer's argument that the injured worker has voluntarily limited his employment options based on his business enterprise. The injured worker testified at hearing that he is paid from the business for work performed consistent with the wage earned as a cashier prior to undertaking this employment. The Staff Hearing Officer finds that the injured worker is engaged in a business opportunity with the intent of gaining managerial experience and earning greater wages with such experience.
Accordingly, the Staff Hearing Officer orders that the injured worker be awarded wage loss compensation as provided by Ohio Revised Code4123.56(B) for the period August 4, 2003 through October 6, 2003 and continuing in accordance with the submission of evidence which documents an ongoing wage loss due to the allowed conditions. The Staff Hearing Officer orders that the wage loss be paid in accordance with Ohio Revised Code 4123.56(B).
This order is based upon the medical reports of Dr. MacGregor dated October 6, 2003 and August 4, 2003, the report of Dr. Huffman dated September 22, 2003, the report of Dr. Lim dated November 6, 2003, the vocational report of Mr. Johnston dated December 17, 2003 and the testimony of the injured worker at hearing.
 {¶ 29} 18. On February 25, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of January 29, 2004.
 {¶ 30} 19. On April 28, 2004, relator, Shamrock Materials, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 31} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 32} Ohio Adm. Code Chapter 4125-1 sets forth the commission's rules applicable to the adjudication of applications for wage loss compensation.
 {¶ 33} Ohio Adm. Code 4125-1-01(A) sets forth several definitions, two of which should be noted here. Ohio Adm. Code 4125-1-01(A)(7) states:
"Suitable employment" means work which is within the claimant's physical capabilities, and which may be performed by the claimant subject to all physical, psychiatric, mental, and vocational limitations to which the claimant is subject at the time of the injury which resulted in the allowed conditions in the claim or, in occupational disease claims, on the date of the disability which resulted from the allowed conditions in the claim.
 {¶ 34} The other definition is found at Ohio Adm. Code 4125-1-01(A)(8), which states:
"Comparably paying work" means suitable employment in which the claimant's weekly rate of pay is equal to or greater than the average weekly wage received by the claimant in his or her former position of employment.
 {¶ 35} Ohio Adm. Code 4125-1-01(D) states in part:
The claimant is solely responsible for and bears the burden of producing evidence regarding his or her entitlement to wage loss compensation. * * *
In considering a claimant's eligibility for compensation for wage loss, the adjudicator shall give consideration to, and base the determinations on, evidence in the file, or presented at hearing, relating to:
(1) The claimant's search for suitable employment.
* * *
(c) A good faith effort to search for suitable employment which is comparably paying work is required of those seeking nonworking wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work[.] * * *
 {¶ 36} The mere fact of a job search does not entitle a claimant to wage loss compensation. There is a qualitative component to that job search that must be satisfied — one of adequacy and good faith. State exrel. Jones v. Kaiser Found. Hosp. Cleveland (1999), 84 Ohio St.3d 405, citing State ex rel. Consol. Freightways v. Engerer (1996),74 Ohio St.3d 241. Adequacy is determined on a case-by-case basis and can encompass many factors, including the number and character of job contacts. Jones, citing State ex rel. Vanover v. Emery Worldwide (1997),80 Ohio St.3d 367. Adequacy cannot be evaluated when a claimant fails to submit any evidence of his or her job contacts. Kaiser, at 407.
 {¶ 37} Because self-employment provides obvious personal benefits, it is subject to enhanced scrutiny to ensure that such a job choice is related to an injury-induced inability to perform better paying work.State ex rel. Ameen v. Indus. Comm., 100 Ohio St.3d 161, 2003-Ohio-5362, citing State ex rel. Ooten v. Siegel Interior Specialists Co. (1998),84 Ohio St.3d 255. Neither the commission nor the courts should permit a claimant to use wage loss compensation to subsidize a business venture or to assume the financial risks ordinarily attending such ventures. Stateex rel. Rouweyha v. Indus. Comm. (2002), 94 Ohio St.3d 160, 162; Ooten,
supra, at 157.
 {¶ 38} In Ooten, the Supreme Court of Ohio upheld a denial of wage loss compensation to a claimant who, without first conducting a job search, became self-employed after he lost his ability to return to his former position of employment. The Ooten court reasoned that the claimant never put himself in the labor market long enough to demonstrate that his injury prevented him from securing other employment at the pre-injury rate. Jones, supra, at 407 (summarizing Ooten).
 {¶ 39} In this action, two time periods of wage loss are involved requiring a slightly different analysis. The first period begins on August 4, 2003, when claimant began full-time employment at Gold Star. It also includes the employment beginning October 13, 2003, with Buffalo Wing. The second time period begins on or about January 15, 2004, when claimant began self-employment managing a restaurant under a lease with purchase option.
 {¶ 40} Turning to the first time period at issue, at Gold Star, claimant earned $5.15 per hour. At Buffalo Wing, claimant began in October 2003 at $5.25 per hour. Clearly, these employments were not work comparable in pay to the front-end loader operator position with relator that paid $11.51 per hour.
 {¶ 41} Claimant had the burden of proving that the differential in the hourly wage rate between employment with relator and the jobs at Gold Star and Buffalo Wing were the result of his industrial injury. Claimant had the burden of producing evidence to that effect. Ohio Adm. Code4125-1-01(D)(1)(c) requires the production of evidence of a good-faith job search for suitable employment which is comparable paying work.
 {¶ 42} The SHO's order of January 29, 2004 finds that:
* * * [T]he injured worker made a good faith effort to find comparably paying work, but nevertheless suffered a wage loss as a result of returning to the position of cashier.
 {¶ 43} There is no evidence in the record to support the SHO's finding. Nevertheless, claimant asserts here that he testified that he took the job at Gold Star after his unemployment benefits ended. Claimant asks this court to "take judicial notice" that there is a job search requirement for receipt of unemployment benefits. Claimant concedes that there is no documentary evidence of record that he received unemployment benefits. (Claimant's brief, at 6, fn. 1.) The magistrate further observes that there is no documentary evidence of a job search relating to the unemployment benefits allegedly received.
 {¶ 44} The SHO's order does state that the order is based in part on claimant's hearing testimony. The hearing testimony referenced in the order, however, does not indicate that claimant testified that he received unemployment benefits or that he conducted a job search to support the receipt of unemployment benefits.
 {¶ 45} Even if this court were to accept claimant's assertion here, that he received unemployment benefits and that, by implication, he conducted a job search during the period of his receipt of such unemployment benefits, there would still be no evidence before this court to support the commission's finding that claimant "made a good faith effort to find comparably paying work."
 {¶ 46} As previously noted, the mere fact of a job search does not entitle a claimant to wage loss compensation. If claimant did testify that he conducted a job search during the period he received unemployment benefits, it is difficult to see how the commission could evaluate the adequacy of the alleged job search without documentation of the details of the job search.
 {¶ 47} In short, there is no evidence in the record, nor any set of facts alleged here, that would support a finding that claimant conducted a job search during the period of his receipt of unemployment benefits that meets the adequacy threshold.
 {¶ 48} Moreover, claimant does not even allege that he conducted a job search during the period of his employment at Gold Star or his employment at Buffalo Wing when he earned much less than at his employment with relator.
 {¶ 49} Under these circumstances, the commission had no evidence before it to support an award of wage loss compensation for the period of employment at Gold Star beginning August 4, 2003 or at Buffalo Wing beginning October 13, 2003. The commission abused its discretion in awarding wage loss compensation for the first period of employment at issue.
 {¶ 50} As previously noted, the second period of wage loss compensation begins January 15, 2004, when claimant began self-employment as a restaurant manager.
 {¶ 51} The January 27, 2004 letter from claimant's counsel indicates that claimant "is paying himself out of the restaurant's gross receipts and * * * within the past week or so was able to increase his own pay to $6.25 per hour."
 {¶ 52} Clearly, the hourly wage claimant paid to himself as the restaurant manager is not comparable to the wage he earned with relator.
 {¶ 53} Nevertheless, the SHO granted wage loss compensation for this circumstance, explaining:
* * * [T]he injured worker is engaged in a business opportunity with the intent of gaining managerial experience and earning greater wages with such experience.
 {¶ 54} The commission's explanation for granting wage loss compensation fails to justify a finding that the wage differential between relator's wage rate and the wage rate paid by claimant to himself as a restaurant manager is due to the industrial injury.
 {¶ 55} Claimant's self-employment is subject to enhanced scrutiny, as the case law requires. Presumably, claimant is in control, to some extent, as to the compensation he receives from the gross receipts. However, because claimant's hourly rate as a self-employed restaurant manager is not significantly higher than the rate he was paid at regular employment with Gold Star and Buffalo Wing, there is no need for this court to scrutinize the potential for shifting the financial risks of a business venture to the workers' compensation fund. Claimant's failure to conduct any search for work comparable in pay to his job with relator is also fatal to his wage loss claim regarding his restaurant manager situation, regardless of whether it can be said that he has a business opportunity in which there is a potential for wages greater than $6.25 per hour. Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate the January 29, 2004 order of its SHO granting wage loss compensation, and to enter an order denying said compensation.
[1] The parties repeatedly refer to this job as a cashier position; however, claimant's wage loss application indicates that it mainly involved cleaning tables and washing dishes.