447 So.2d 399 (1984)
Joel STAHL, Appellant,
v.
SOUTHEASTERN X-RAY and Risk Management Services, Inc., Appellees.
No. AP-301.
District Court of Appeal of Florida, First District.
March 21, 1984.
*400 Joel Stahl, pro se.
H. George Kagan, of Miller, Hodges & Kagan, Miami, for appellees.
WENTWORTH, Judge.
The claimant in this case, a 30 year old high school graduate, appeals an order denying a $1000+ claim for personal costs and damages incurred while he attempted pro se to obtain controverted benefits, and granting wage loss benefits from March through May, 1982, but denying such benefits thereafter because claimant was "not seeking other employment." We affirm the denial of damages as involving costs not recompensed by Chapter 440, Florida Statutes, but reverse the deputy's ruling on wage loss benefits after June 1, which were denied for lack of work search while claimant was employed full time.
The deputy relied solely on claimant's cessation of active work search; the order contains no findings with respect to his actual capacity or limitations; and the record consists solely of testimony by claimant and documentary evidence which does not otherwise show voluntary limitation of income. The issue therefore appears to be whether the deputy properly applied the work search rule to require forfeiture of wage loss benefits when claimant, because of objection from his present employer, stopped active job search efforts which had yielded no better alternative throughout the initial three months on that job. We conclude he did not, and find that earlier decisions holding certain part-time employments to be inadequate job market tests[1] do not support that result in *401 this case.[2] We need not, of course, determine that a claimant's full-time employment at less than former wages always shifts to employer the burden of proof of voluntary limitation of income under the statute.[3] But the context of such employment negates voluntary limitation in this case, absent any evidence that claimant would not "accept employment commensurate with his ... abilities."[4]
The record reflects claimant's injury by compensable accident on March 7, 1980, while handling x-ray equipment for the appellee, self-insured employer, for whom claimant had worked approximately six months doing skilled technical work and heavy lifting involved in installation of equipment. He was apparently temporarily disabled for a year, until maximum medical improvement was reached April 1, 1981, with a 15% permanent impairment from his back injury. A previous claim was determined on October 11, 1982, and affirmed on appeal in March, 1983, except for correction of the $350.00 average weekly wage by addition of $10.00 for insurance payment. Stahl v. Southeastern X-Ray, 427 So.2d 1089 (Fla. 1st DCA 1983). Wage loss in some amount was paid through February 28, 1982, and the current claim was filed in March and heard in August, 1982.
Claimant's employment in January and February, 1982, was with D & K X-Ray, doing maintenance work at $3.75 per hour. On March 6, according to the order, he was "laid off by his employer ... and ... thereafter for a period of two weeks, he actively looked for work until locating the job at *402 Diamond Laboratories, paying $3.35 an hour and while with Diamond Laboratories sought a better paying job until late May when his employer promoted him to a more responsible job [customer relations for the photographic lab] and gave him a raise effective June 1, 1982," to $3.75 per hour. The deputy clearly relied on claimant's "not seeking other employment" to find voluntary limitation. The deputy's statement, with reference to claimant's current job, that he "plans to make this work his career for the indefinite future" must be construed in reference to claimant's testimony set out below, which is consistent with other record evidence.[5] Admission that he was not "calling anymore for jobs" plainly does not show a decision by claimant that he would not "accept employment commensurate with his ... abilities" as required by the statute to deny benefits, and the order does not so find. Pertinent testimony is:
It was sometime in May I made a phone call from the lab to try to set up an interview, a job interview, and I didn't know it at that time that the boss had a listening device, ... And he overheard me ... and he asked me if I was looking for work and I told him yes, that three thirty-five, I just can't live on that. He said that he might be able to put me into a better position... .
So, in June he put me into a new position and gave me a raise to three seventy-five an hour ... which made me happy because now I'm starting to make more money there and they're giving me a little bit more authority.
.....
Q: To the best of your knowledge and knowing what you know and your evaluation of what the boss has told you about your job and presently, is it your intention to stay? I don't mean forever in the future. None of us can look that far down the road. Is it your present intention to stay?
A: Well, like I said, if I have some type of future there, yes, I'm going to stay.
My boss has indicated that I have a future there, so I feel that I have a good job right now and it would be silly for me to leave a good thing.
Q: So, in June or July since you got your raise, you haven't been calling anymore for jobs? You're trying to increase your job there?
A: Right.
Under these circumstances we conclude the claimant adequately met his initial burden, absent any findings by the deputy or any evidence showing claimant's lack of good faith effort or willingness to return to his former job or one with equivalent earnings throughout the year between MMI and his commitment to the job now in question. Benefits should have been awarded for the months when claimant worked full time at the only employment available to him so far as reflected by the record. The explicit statutory test, i.e., voluntary limitation of income, is in our opinion clearly negated by claimant's unchallenged unavailing efforts over preceding months (for which wage loss was awarded) to obtain employment in the work he formerly did or to find a comparably paid job. The deputy's order would compel claimant to forfeit any present or future commitment to a full-time job which appears to be appropriate in all ways other than presently diminished earnings. The order would indicate that the deputy misconstrued the evidentiary work search rule out of context with the statutory test.
Reversed and remanded for proceedings consistent herewith.
*403 ZEHMER, J., concurs.
NIMMONS, J., concurs in part & dissents in part with opinion.
NIMMONS, Judge, concurring in part and dissenting in part.
I concur in the court's opinion affirming the deputy's denial of appellant's claim for "personal costs and damages" but dissent from the court's reversal of the deputy's denial of wage-loss benefits.
A wage-loss claimant has the burden of proving all elements of his claim for wage-loss benefits. Holiday Care Center v. Scriven, 418 So.2d 322, 326 (Fla. 1st DCA 1982). Under Section 440.15(3)(b)2, Florida Statutes, the employee has the burden "to establish that any wage loss claimed is the result of the compensable injury." The burden remains on an employee who files monthly wage-loss claims to demonstrate an adequate and good faith attempt to secure employment commensurate with his abilities. Regency Inn v. Johnson, 422 So.2d 870, 876 (Fla. 1st DCA 1982). In adopting the wage-loss concept, the legislature by necessary implication has adopted the "work search" test as the means for determining the employee's post-injury capacity to earn. Id. at 877. Under the 1979 Act, requests for wage-loss benefits must be filed monthly and each claim is a separate claim. Deltona Corporation v. Morris, 418 So.2d 1274 (Fla. 1st DCA 1982).
A claimant who periodically seeks wage-loss benefits is not excused from the continuing duty of testing his employability simply because he has taken a full-time job with which he is satisfied, cf. Piccadilly Cafeteria v. Polite, 433 So.2d 591 (Fla. 1st DCA 1983); Sharp Construction Co., Inc. v. Perez, 429 So.2d 367 (Fla. 1st DCA 1983), apparently the situation in the case at bar.
By his unwillingness to continue testing the job market after May, 1982, the claimant failed to satisfy his burden of demonstrating that the wage losses claimed thereafter were a result of the compensable injury. I would affirm.
NOTES
[1] Sharp Construction Co. v. Perez, 429 So.2d 367 (Fla. 1st DCA 1983); Piccadilly Cafeteria v. Polite, 433 So.2d 591 (Fla. 1st DCA 1983). The latter case involves claimant's voluntary confinement, absent medical restrictions, to a single job which, relative to the customary dual employment on which her average wage was based, did not constitute full-time employment. She had also quit her original employment after more than a year's performance post-injury, based on self-imposed restrictions not supported by other current medical evidence.
[2] This court, in Flesche v. Interstate Warehouse, 411 So.2d 919 (Fla. 1st DCA 1982), appropriately noted:

We observe that the Supreme Court of Florida has quite recently and explicitly reemphasized the rule that when the claimant affirmatively demonstrates that `some effort' was made to obtain employment within his limitations, the burden shifts to the employer to demonstrate that suitable work is in fact available. Wright v. Gulf and Western Food Products, 401 So.2d 1316, 1318 (Fla. 1981). It follows that when the burden has properly been shifted to the E/C, and the E/C has failed to carry that burden at the initial hearing, then an award based on wage earning capacity loss is justified. In that event, the E/C may utilize modification proceedings to establish a change in circumstances by demonstrating that suitable employment is available to the claimant which would require a reduction in wage earning capacity benefits... .
411 So.2d 919, at 926, n. 14.
[3] 440.15

.....
(3) PERMANENT IMPAIRMENT AND WAGE-LOSS BENEFITS. 
.....
(b) Wage-loss benefits. 
.....
2. The amount determined to be the salary, wages, and other remunerations the employee is able to earn after reaching the date of maximum medical improvement shall in no case be less than the sum actually being earned by the employee, including earnings from sheltered employment. In the event the employee voluntarily limits his or her income or fails to accept employment commensurate with his or her abilities, the salary, wages, and other remuneration the employee is able to earn after the date of maximum medical improvement shall be deemed to be the amount which would have been earned if the employee did not limit his or her income or accepted appropriate employment. Whenever a wage-loss benefit as set forth in subparagraph 1. may be payable, the burden shall be on the employee to establish that any wage loss claimed is the result of the compensable injury.
[4] Ibid. As to claimant's burden under the statute with respect to any specific period during which wage loss is claimed, this court in Regency Inn v. Johnson, 422 So.2d 870, 877 (Fla. 1st DCA 1982), said:

We submit ... that consideration of the factors [claimant's actual physical impairment, age, industrial history, training and education, motivation, work experience, work record, diligence and the like] is still required, as in the past, in determining the adequacy and good faith of the job search, and in determining under the 1979 amendments whether the employee has voluntarily limited his employment or failed to accept employment commensurate with his abilities.
Obtaining and performing a full time job clearly constitutes a job "search" and market test. Whether the acceptance of a particular job with lower earnings amounts to voluntary limitation should be determined based on the enumerated factors (including of course availability of jobs) and not based simply on a requirement for continued diligent search by claimant after completion of his normal daily work schedule.
[5] Claimant testified to his capacity with his back impairment to handle the duties of his original employment except not "to be one of those ... to carry the six hundred pound unit in." He was asked "was it your intention to take the job [at x-ray places] if they had an opening?" and responded, "Yes, it was...." Although his current employment is with a photographic laboratory, and he had some past history of training and work as a photographer, his current job functions still include equipment maintenance. He considered the higher paid x-ray servicing job, in which he was injured, to be more prestigious "where you ... have a company vehicle and things."