[This opinion has been published in *Ohio Official Reports* at 87 Ohio St.3d 171.]

THE STATE EX REL. BRINKMAN, APPELLANT, V. INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Brinkman v. Indus. Comm*., 1999-Ohio-320.]

*Workers' compensation—Industrial Commission abuses its discretion in denying wage-loss compensation, when.*

(No. 97-2142–Submitted September 21, 1999–Decided November 17, 1999.)

APPEAL from the Court of Appeals for Franklin County, No. 96APD10-1321.

_____

{¶ 1} Appellant-claimant, William A. Brinkman, a Columbus policeman, sustained multiple injuries in a 1994 work-related car accident. Examining doctors agreed that claimant could not return to his former job, and a disability retirement was granted that October.

{¶ 2} Following his retirement, claimant continued his National Guard duties and also found part-time work as a school bus driver. He also unsuccessfully applied for security work with several local hospitals. Finally, in February 1995, claimant obtained a part-time job paying $20 per hour at Anheuser-Busch, Inc. ("Busch"). According to claimant, Busch told him that part-time workers were given preference for full-time positions as they became available.

{¶ 3} Later that year, claimant moved appellee Industrial Commission of Ohio for wage-loss compensation. Claimant submitted medical evidence of an inability to return to his former position, together with wage statements and job search records in support. A commission deputy on August 20, 1996, denied claimant's application, writing:

"[C]laimant requested wage loss from the date of his disability retirement * * *. A DHO denied the request on 4-4-96 stating that there was no credible medical evidence relating claimant's wage loss to the allowed conditions. The DHO was

unable to ascertain whether the claimant had made a good faith job search[,] as the physician examining claimant had not made a residual functional capacity assessment. On 4-18-96, Dr. Friedman completed a residual functional capacity assessment * * *. On 5-20-96, an SHO awarded wage loss compensation from 2-12-95 and to continue.

"The Deputy finds that there is medical evidence to reflect the claimant's residual functional capacity between 7-21-95 to 4-17-96. The record discloses Dr. Friedman examined the claimant on 7-21-95. There is a nine (9) month gap between his examination and the residual functional capacity assessment of 4-18-96. However, since Dr. Friedman did not perform a new examination, his functional assessment must have been based upon his earlier examination. The Deputy believes that by referencing his earlier exam Dr. Friedman had sufficient findings to issue a credible opinion on claimant's residual functional capacity between 7-21-95 and 4-17-96.

"There is no medical evidence of claimant's residual functional capacity from 10-15-94 to 7-20-95 and[,] therefore, the Deputy is unable to determine whether claimant's job search after his retirement was consistent with his medical restrictions for this period. Drs. Lohrman, Rutherford, Friedman and Mavian stated he was unable to return to police work but fail[ed] to indicate his residual functional capacity from 10-15-94 to 7-20-95. Dr. Friedman finally provides an assessment on 4-18-96 based on an exam performed on 7-21-95. Wage loss compensation is denied from 10-15-94 to 7-20-95 due to lack of medical evidence to relate wage loss to the allowed conditions.

"Based on the report and residual functional capacity of Dr. Friedman, the Deputy finds claimant has had the ability to perform light work since 7-21-95. He has found work within his physical restrictions and works on a part-time basis for Anheuser Busch. He earns $20 per hour working week ends in the packaging department. His testimony discloses he is not currently looking for other work

within his physical restrictions as he does not believe he can find entry level work which would pay him what he was earning as a policeman. He also stated he has the potential of going full-time at Anheuser Busch. Recently, Anheuser began to hire full-time employment from the week-end employee list. The Deputy finds that claimant's anticipation of going full-time with Anheuser Busch cannot be used as a basis for not making a good faith search for full-time employment, nor does his belief regarding procurement of entry level work preclude a good faith work search for full-time employment.

"* * *

"He has made a voluntary choice to maintain part-time work which results in an indefinite decrease in his wages. * * * Therefore, the request for wage loss for the period 7-21-95 to 8-29-96 is also denied."

{¶ 4} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying his application. The court of appeals upheld the denial of wage-loss compensation from July 21, 1995 forward, based on a voluntary limitation of earnings. It vacated wage-loss denial from October 15, 1994 through July 20, 1995, and returned the cause for further consideration, after finding that the commission erroneously reported the date of a pertinent medical examination.

{¶ 5} This cause is now before this court upon an appeal as of right.

————————————

*Dean G. Reinhard Co., L.P.A.*, and *Charles Zamora*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Dennis L. Hufstader*, Assistant Attorney General, for appellee Industrial Commission.

*Janet E. Jackson*, City Attorney, and *Stephanie Mitchell Hughes*, Assistant City Attorney, for appellee city of Columbus.

————————————

***Per Curiam.***

**{¶ 6}** Two periods of wage loss are at issue: October 15, 1994 through July 20, 1995, and July 21, 1995 through August 20, 1996. For the reasons to follow, the court finds that the commission abused its discretion in denying wage-loss compensation over both periods.

**{¶ 7}** Despite the laudable goals of wage-loss compensation, there is a heightened potential for abuse whenever weekly compensation and wages are concurrently permitted. In response to this susceptibility, certain post-injury employment is more carefully scrutinized. Among these are part-time and self-employment. Described generically as voluntary limitations of income, these two categories are examined to ensure that wage-loss compensation is not subsidizing speculative business ventures or life-style choices. *State ex rel. Ooten v. Siegel Interior Specialists Co*. (1998), 84 Ohio St.3d 255, 703 N.E.2d 306; *State ex rel. Pepsi-Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 648 N.E.2d 827.

**{¶ 8}** For the period July 21, 1995 through August 20, 1996, the commission ruled that claimant voluntarily restricted his income. The commission initially appears to assume that the limitation of hours imposed by part-time work automatically equals a proscribed limitation of income. With a $20 per hour job as we have here, however, this assumption is inappropriate. Twenty hours part-time at Busch will most likely exceed forty hours of minimum-wage work elsewhere.

**{¶ 9}** The commission also characterized claimant's perceived income limitation as voluntary because claimant did not continue to look for full-time work after getting the job at Busch. We have never specifically addressed the question of continuing a full-time job search after acquisition of part-time work. We find particularly appealing Florida's approach to this question due to its judiciary's balance between the normal part-time concerns and economic reality.

**{¶ 10}** In *Stahl v. Southeastern X-Ray* (Fla.App.1984), 447 So.2d 399, the former employer alleged that claimant's failure to look for a better-paying job after

accepting other minimum-wage employment constituted a voluntary income limitation. The court disagreed, writing:

"Whether the acceptance of a particular job with lower earnings amounts to voluntary limitation should be determined based on the enumerated factors [physical impairment, age, industrial history, training and education, motivation, work experience, work record, diligence and availability of jobs] and not based simply on a requirement for continued diligent search by claimant after completion of his normal daily work schedule." *Id.* at 401.

{¶ 11} Rather than focusing simply on income, the Florida court viewed the claimant's employment situation broadly. Within the first three months of work, the claimant received a forty-cent-per hour raise and was given increased responsibility. When asked why he had stopped looking for other work, claimant responded that " '[m]y boss has indicated that I have a future there, so I feel that I have a good job right now and it would be silly for me to leave a good thing.' " *Id*. at 402. The court agreed, concluding that "[t]he deputy's order would compel claimant to forfeit any present or future commitment to a full-time job which appears to be appropriate in all ways other than presently diminished earnings." *Id*.

{¶ 12} In this case, the commission is also asking the claimant to "leave a good thing." *Stahl* is admittedly distinguishable in that post-injury employment was full-time, not part-time, but whether that does or should excuse a broader-based analysis is questionable. Wage-loss compensation is not forever. It ends after two hundred weeks. R.C. 4123.56(B). Thus, when a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life— long after wage-loss compensation has expired.

{¶ 13} This does not mean that the claimant is entitled to turn down a job as paying too little and still claim wage-loss compensation. Neither, however,

should it compel the departure from a lucrative job with full-time potential for menial work simply because the latter is immediately available full-time.

{¶ 14} There is no evidence contrary to our claimant's assertion that he took the Busch job because it was the first job—full or part-time—that was offered. Claimant's uncontradicted statements also indicate that part-timers were given preference when full-time slots opened. This supports claimant's assertion that a move to full-time was a realistic possibility.

{¶ 15} We find, therefore, that under these facts, the commission abused its discretion in finding a voluntary limitation of income. Viewed in totality, the facts do not establish such a limitation or a life-style-motivated job selection—the two concerns that have prompted close examination of part-time work.

{¶ 16} Turning to the other period at issue, wage-loss compensation was denied from October 15, 1994 through July 20, 1995, for lack of medical evidence causally relating claimant's wage-loss to his allowed conditions. This finding, however, was premised on the commission's mistaken belief that Dr. Friedman did not examine claimant until July 21, 1995. Dr. Friedman actually examined claimant on July 21, 1994. If Dr. Friedman's recent report satisfied claimant's medical wage-loss prerequisites for July 21, 1995 forward, it is valid also for the period October 15, 1994 through July 20, 1995.

{¶ 17} Accordingly, the judgment of the court of appeals is reversed, and a writ of mandamus is hereby issued that orders the commission to award wage-loss compensation over the requested periods.

*Judgment reversed*
*and writ granted.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____