THE STATE EX REL. AMEEN, APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Ameen v. Indus. Comm.*,
100 Ohio St.3d 161, 2003-Ohio-5362.]

(No. 2003–0138—Submitted August 26, 2003—Decided October 22, 2003.)

## Per Curiam.

{¶ 1} On August 22, 1997, appellant-claimant, Jane Ameen, sustained an injury while employed as a nurse by appellee Trumbull Memorial Hospital. She received temporary total disability compensation ("TTC") intermittently until April 1998, when the hospital terminated her employment. After April 1998, the hospital continued to pay TTC.

{¶ 2} Claimant sought counseling from the Ohio Bureau of Vocational Rehabilitation and the Private Industry Council. With her physical ability to return to her former position of employment compromised, claimant was advised to explore different options, and she eventually returned to college for a teaching degree.

{¶ 3} On August 17, 2000, claimant's TTC was terminated after maximum medical improvement was found. The next day, she graduated from college. Ten days later, she began teaching for the Warren City School District.

{¶ 4} Claimant's teaching job paid slightly less than her nursing position, prompting her to move appellee Industrial Commission of Ohio for wage-loss compensation under R.C. 4123.56(B). The commission denied that request after concluding that claimant had voluntarily limited her income. It specifically found that claimant could not return to her former position of employment but criticized claimant nevertheless for not seeking other nursing jobs. It characterized claimant's acceptance of a teaching job as motivated by lifestyle considerations, based on what it considered to be an inadequate search for a position in nursing or a field paying comparably.

{¶ 5} Claimant petitioned the Court of Appeals for Franklin County for a writ of mandamus. The court agreed that her job search was inadequate and affirmed the commission's order.

{¶ 6} The cause is now before this court upon an appeal as of right.

{¶ 7} When an employee sustains a work-related injury, the workers' compensation system has two immediate goals: to return the employee to the labor force as soon as possible and, until then, to ameliorate the hardship incurred by lost or reduced wages. Prior to 1986, for those who had lost earnings due to an inability to return to the former position of employment, TTC was the traditional mainstay. Unfortunately, it did not differentiate between claimants who could do no work and those who, while unable to resume their prior employment, could do some work. Because alternate employment disqualified claimants for TTC, those in the latter category had little choice but to remain at home in order to preserve TTC eligibility. This defeated a primary workers' compensation objective.

{¶ 8} In 1986, the General Assembly resolved this dilemma by approving wage-loss compensation. Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 718, 767. This benefit encourages a return to employment by paying a percentage of the shortfall between a claimant's pre- and postinjury income. Attaining wage-loss compensation requires proof of (1) actual wage loss and (2) a causal relationship between injury and reduced earnings. *State ex rel. Watts v. Schottenstein Stores Corp.* (1993), 68 Ohio St.3d 118, 121, 623 N.E.2d 1202.

{¶ 9} Evidence of the latter can be overcome by a showing that the claimant voluntarily limited his or her income. *State ex rel. Brinkman v. Indus. Comm.* (1999), 87 Ohio St.3d 171, 718 N.E.2d 897. This conclusion necessarily follows a finding that claimant's postinjury employment was motivated by lifestyle, rather than medical, considerations. Part-time employment and self-employment, for example, provide obvious personal benefits. Consequently, they receive enhanced scrutiny to ensure that such a job choice indeed followed an injury-induced inability to perform better paying work. See *State ex rel. Pepsi–Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 648 N.E.2d 827; *State ex rel. Ooten v. Siegel Interior Specialists Co.* (1998), 84 Ohio St.3d 255, 703 N.E.2d 306. Claimants generally bolster their petitions for wage-loss compensation by showing a job search of sufficient quantity and quality to establish that the job taken was truly the only position available.

{¶ 10} The mere fact of full-time employment does not immunize a claim from this review. *State ex rel. Yates v. Abbott Laboratories, Inc.*, 95 Ohio St.3d 142, 2002–Ohio–2003, 766 N.E.2d 956, ¶ 37. In the instant case, the commission felt that claimant had not conducted enough of a job search to demonstrate an injury-induced unavailability for higher-paying employment. Combined with claimant's

complete career change, the commission concluded that claimant's job was lifestyle-generated. We disagree.

{¶ 11} Employment that coincides with one's interests, desires, or aptitudes is not inherently suspect. The present claimant was permanently disqualified from her former position of employment, so a new career was a logical option, and claimant prepared for one. Claimant's decision to teach rather than to pursue an allied medical career should not, under these circumstances, be viewed unfavorably.

{¶ 12} The commission in its order stresses the lack of evidence of any search for nursing jobs. However, its analysis ignores (1) the commission's own finding that claimant could not resume the duties she had, and (2) that a search for any nursing opening while collecting TTC—which constituted the relevant job-search period—may have been viewed as inconsistent with her allegation of temporary total disability and caused compensation termination.

{¶ 13} The commission also seemingly forgets a key workers' compensation goal: returning an injured worker to the labor force as quickly as feasible. In deriding the absence of a more extensive job search, the commission disregards claimant's immediate success in having begun a job within days of TTC termination.

{¶ 14} The commission has put claimant in a "Catch-22." If claimant had declined the teaching job and had kept looking for something more lucrative—as the order implies she should have—claimant would have been wageless. We suspect, however, that had claimant applied for nonworking wage-loss compensation during this search period, such compensation would have been denied because of her failure to take the teaching job that reduced her wage loss.

{¶ 15} This case differs from the full-time employment situation in *State ex rel. Yates v. Abbott Laboratories, Inc.*, supra. There, the full-time clerical employment obtained by the claimant grossly underutilized her college degree and real estate license. Her underemployment was pivotal in determining that claimant was required to maintain—despite her full-time job—an ongoing search for something more in keeping with her talents and earning capability.

{¶ 16} Here, claimant exploited the intellectual abilities that allowed her to become a nurse and accepted a commensurate academic challenge that led to a new career. Her career choice, moreover, was not one that was economically out of line with her former livelihood. Unlike in *Yates*, the present claimant's job has a future. There is a degree of job security, the expectation of raises, and potential for advancement.

{¶ 17} Requiring this claimant to continue looking for work with the expectation that she will leave her teaching job is inappropriate. See *Brinkman,* 87 Ohio

St.3d 171, 718 N.E.2d 897. Brinkman's injury forced him from his police officer's job. After a fruitless, full-time job search, he accepted a part-time position that paid $20 an hour and could expand to full-time. The commission denied wage-loss compensation, citing claimant's failure to keep looking for full-time work. We overturned that order, criticizing the commission's narrow analysis. Looking more broadly, we emphasized that wage-loss compensation was statutorily limited to 200 weeks.

{¶ 18} "[W]hen a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life—long after wage-loss compensation has expired." Id. at 174, 718 N.E.2d 897.

{¶ 19} We cited with approval a Florida case, *Stahl v. Southeastern X–Ray* (Fla.App.1984), 447 So.2d 399, which upheld a claimant's right to wage-loss compensation despite termination of a job search. Stahl's postinjury employment paid less than his former job but showed real promise for advancement. Lauded by his supervisor, he had already received a significant raise despite his short tenure. His boss assured him that he had a future with the company and, considering everything, the claimant concluded—and the court agreed—that it would be foolish to "leave a good thing." Id. at 402.

{¶ 20} Applying this reasoning to the current debate, it is equally inappropriate to have expected claimant to decline the teaching job or to continue seeking other work. As previously stated, claimant has a future with the school district. Again, there is job security, the prospect of salary increases, and advancement possibility. And there are other considerations that militate against the commission's determination. Claimant's position is presumably contractual and forecloses the option of leaving for another position on short notice. Equally important are the intangibles. Teaching entails commitment. It is a disservice to the claimant and the administration, faculty, and students who rely upon her to expect her to leave midterm should a better position surface.

{¶ 21} Having considered all of these factors, we find that the claimant did not forfeit wage-loss compensation eligibility either by taking the teaching job or by stopping her job search.

{¶ 22} Accordingly, the judgment of the court of appeals is reversed, and a writ of mandamus is issued that compels the payment of wage-loss compensation over the period requested.

Judgment reversed
and writ granted.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON and O'CONNOR, JJ., concur.

O'DONNELL, J., dissents.

_____

Elliott, Heller, Maas, Moro & Magill Co., L.P.A., and C. Douglas Ames, for appellant.

Jim Petro, Attorney General, and Dennis H. Behm, Assistant Attorney General, for appellee Industrial Commission.

Stefanski & Associates, L.L.C., and Janice T. O'Halloran, for appellee Trumbull Memorial Hospital.