DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} In this original action, relator, Jarrod C. Bishop, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its February 4, 2004 order to the extent that it denied him R.C. 4123.56(B) wage-loss compensation for the period of August 1, 2002 through June 18, 2003 and to enter an amended order granting the same.
 {¶ 2} On April 30, 2001, relator sustained an injury during the course and scope of his employment with Honda of America Mfg., Inc. ("respondent"). His claim with the commission was allowed for "sprain of neck; bilateral bicipital tenosynovitis; [and] sprain of chest (NEC)." Relative to his position with respondent, relator's average weekly wage was determined to be $940.91. Relator received temporary total disability compensation until May 2, 2002, when it was determined that he had reached maximum medical improvement. At that time, relator sought light-duty work with respondent, who was unable to provide such a position. Relator registered with the Ohio Bureau of Employment Services and received unemployment compensation from May 2002 through July 30, 2002.
 {¶ 3} On August 1, 2002, relator began working as a car salesman with Nelson Auto Group ("Nelson Auto"). He worked there through the end of 2002, earning a total of $14,037.15 in sales commissions. Seeking to improve his earnings, relator resigned his position with Nelson Auto to begin sales work with Steve Austin Auto Group ("Austin Auto") in January 2003. Relator stayed with Austin Auto until June 19, 2003, earning approximately $12,726. Relator then returned to Nelson Auto, again seeking to increase his earnings. Eventually, relator's earnings at Nelson Auto exceeded his former wages at Honda.
 {¶ 4} In the interim, relator filed his application for wage loss compensation. On December 31, 2003, a district hearing officer ("DHO") issued an order granting relator's application for wage loss compensation from May 3, 2002 through the date of the hearing, December 29, 2003. The DHO found that there was no evidence that relator was "grossly underemployed" or that he accepted his position as a car salesman as a personal lifestyle choice. The DHO cited State ex rel. Brinkman v. Indus.Comm. (1999), 87 Ohio St.3d 171 and State ex rel. Ameen v. Indus. Comm.,100 Ohio St.3d 161, 2003-Ohio-5362 as supporting her decision. Respondent appealed the order.
 {¶ 5} Consequently, on February 4, 2004, a staff hearing officer ("SHO") heard relator's claim. Contrary to respondent's arguments, the SHO found that relator had not voluntarily restricted his income. The SHO further noted that, despite the disparity in relator's wages, income alone is not determinative of relator's entitlement to wage-loss compensation. Ultimately, the SHO agreed with the DHO and granted relator's request for working wage-loss compensation. Again, respondent appealed the determination.
 {¶ 6} On May 12, 2004, the matter was submitted to a commission deputy for further proceedings. In considering relator's claim, the deputy first mentioned applicable sections of the Ohio Administrative Code and found that the code requires an injured worker to engage in an ongoing, good-faith job search for comparably paying work over any period for which wage-loss compensation is sought. The deputy noted that relator presented no evidence that he engaged in such a job search once he began work as a car salesman.
 {¶ 7} The deputy further surmised that the holdings and rationale ofBrinkman and Ameen, supra, were not applicable to relator's claims; therefore, the requirement of a good-faith job search was not waived by virtue of the overriding considerations discussed therein. Ultimately, the deputy concluded that relator's failure to engage in a good-faith job search for a higher paying job precluded him from qualifying for wage-loss compensation. The commission adopted the deputy's ruling, prompting relator to file this mandamus action.
 {¶ 8} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate for hearing. On March 31, 2005, the magistrate issued his decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission's holding that relator was required to continue searching for work comparable in pay to his former position while he was employed full-time as a car salesman equaled a mistake of law and a misapplication of the Supreme Court of Ohio's holdings in Brinkman and Ameen, supra. Accordingly, the magistrate recommended that the court grant relator's request for a writ of mandamus.
 {¶ 9} Respondent filed timely objections to the magistrate's decision, contending that it amounts to a mistake of law. Specifically, respondent asserts that the magistrate ignored statutory prerequisites for entitlement to an award of wage-loss compensation. Furthermore, respondent submits that the magistrate erroneously interpreted controlling precedent by favorably applying the court's holdings inBrinkman and Ameen, supra, to relator's claim.
 {¶ 10} Pursuant to Ohio Adm. Code 4125-1-01(D), an injured worker has the burden of proving entitlement to wage-loss benefits. Ohio Adm. Code4125-1-01(D)(1)(c) further states that a good-faith job search for comparably paying work is required of those seeking wage-loss compensation who have not returned to comparably paying work. "A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss." Ohio Adm. Code 4125-1-01(D)(1)(c). That section continues to provide a non-exclusive list of relevant factors to be considered in evaluating whether a claimant has made a good-faith effort. Additionally, comparably paying work is defined as that for which the claimant's weekly rate of pay is equal to or greater than the claimant's average weekly wage in his former position. Ohio Adm. Code 4125-1-01(A)(8).
 {¶ 11} It is undisputed that relator's average weekly wages from August 1, 2002 through June 19, 2003 were not equal to or greater than his average weekly wage while working for respondent. While at Honda, relator's average weekly wage ("AWW") was calculated to be $940.91. Relator's AWW during his first stint with Nelson Auto was $643.90, and his AWW at Austin Auto was only $531.75. It is further undisputed that relator did not conduct a job search for comparably paying work outside of his job as a car salesman.
 {¶ 12} Respondent is correct to the extent that a return to full-time employment does not automatically eliminate relator's duty to search for comparably paying work. State ex rel. Yates v. Abbott Laboratories, Inc.,95 Ohio St.3d 142, 2002-Ohio-2003. However, it is equally true that the Supreme Court of Ohio has held that the job search is not mandatory.State ex rel. Timken Co. v. Kovach, 99 Ohio St.3d 21, 2003-Ohio-2450, at ¶ 22. Rather, under certain circumstances, a claimant's failure to continue to seek employment will be excused. "[T]he overriding concern * * * is the desire to ensure that a lower-paying position — regardless of hours — is necessitated by the disability and not motivated by lifestyle choice." Timken, at ¶ 24, quoting Yates, at ¶ 37.
 {¶ 13} Therefore, in examining a claimant's failure to search for another job, the court must use a broad analysis that goes beyond mere wage loss. Timken, at ¶ 25. This broader analysis was first emphasized in Brinkman, the case in which the court first recognized that, under some situations, it would be inappropriate to ask a claimant to "leave a good thing" solely to narrow a wage differential. Brinkman, at 174. InBrinkman, the court noted the broad analysis used by a Florida court inStahl v. Southeastern X-Ray (Fla.App. 1984), 447 So.2d 399, with approval. The court reiterated and adopted part of Stahl's rationale:
Whether the acceptance of a particular job with lower earnings amounts to voluntary limitation should be determined based on the enumerated factors [physical impairment, age, industrial history, training and education, motivation, work experience, work record, diligence and availability of jobs] and not based simply on a requirement for continued diligent search by claimant after completion of his normal daily work schedule.
Brinkman, at 173-174, quoting Stahl, at 401. The Brinkman court further emphasized that a broad analysis is necessary in light of the temporary nature of wage-loss compensation:
* * * Wage-loss compensation is not forever. It ends after two hundred weeks. R.C. 4123.56(B). Thus, when a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life — long after wage-loss compensation has expired.
Id. at 174.
 {¶ 14} Based on the foregoing, we find that the commission improperly precluded relator from wage-loss compensation based solely on his failure to conduct a job search while he was employed full-time as a car salesman. The commission should have gone further into the analysis and applied the rationale of Brinkman to relator's claim. Instead, the commission erroneously disregarded Brinkman because it involved a period of wage loss that preceded the effective date of the relevant Ohio Administrative Code sections and because it concerned part-time employment.
 {¶ 15} The commission also mistakenly found that a more recent case,Ameen, which applied the reasoning of Brinkman, did not pertain to relator's action. In Ameen, the injured worker attended four years of college to obtain a degree in a new field that provided positive opportunities for future advancement and, eventually, found a job in that new field at a rate of pay that neared that of her former position. The commission differentiated Ameen on the grounds that relator's participation in work-related seminars and job training did not amount to pursuing a degree and his earnings as a car salesman did not approximate his earnings at Honda.
 {¶ 16} The magistrate concluded that the commission's analysis ofBrinkman and Ameen was too narrowly drawn to a factual comparison and failed to recognize the broader reasoning that underlies the holding of the cases. The court agrees. Therefore, under the given circumstances, relator's lack of a continued, consistent attempt to obtain comparably paying work was not fatal to his claim.
 {¶ 17} The analysis must go beyond the mere wage loss and investigate other factors to determine whether the wage disparity is voluntary in the sense that it is motivated by lifestyle choice. As noted by the DHO and the SHO in their decisions, there is no evidence in the record to support the conclusion that relator accepted and continued in his employment as a car salesman as a personal lifestyle choice. Nor is there any indication that he was voluntarily or grossly underemployed.[1]
 {¶ 18} Additionally, it is undisputed that relator had only a high school diploma at the time of his injury, the extent of which precluded his return to the type of work he had previously performed. Thus, the scope and quality of jobs available to relator were limited. Despite this, relator still found employment in just over a month with Nelson Auto. Once employed, he worked in excess of 40 hours per week and took advantage of any opportunity to improve his skills. Moreover, contrary to the notion that relator utterly failed to search for more comparably paying work, he actively sought employment at a second dealership in the hope of increasing his earnings. A short time later, relator returned to Nelson Auto. There, through continued experience, training and hard work, relator eliminated his wage loss from June 20, 2003 through the end of the year. In the end, that is the very essence of why a good-faith job search is required: "to obtain suitable employment that will eliminate the wage loss." Ohio Adm. Code 4125-1-01(D)(1)(c).
 {¶ 19} Under the facts of this case, we conclude that the commission's decision required relator to "leave a good thing" by abandoning his gainful employment as a car salesman, which became more profitable with experience, motivation, time and training, to seek the possibility of more instant comparably paying work. Therefore, following an examination of the magistrate's decision, as well as an independent review of the record pursuant to Civ.R. 53, we overrule respondent's objections to the magistrate's decision and find that the magistrate properly discussed and determined the relevant law. In accord with the magistrate's recommendation and decision, a writ of mandamus is granted. The commission is ordered to vacate its February 4, 2004 order to the extent that working wage-loss compensation is denied beginning August 1, 2002 and to enter an amended order granting relator's application for working wage-loss compensation for the period beginning August 1, 2002 through June 18, 2003.
Objections overruled; writ of mandamus granted.
Petree and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Jarrod C. Bishop, :
 Relator, :
v. : No. 04AP-747
Industrial Commission of Ohio :
and Honda of America Mfg., Inc., : (REGULAR CALENDAR)
 Respondents. :
 MAGISTRATE'S DECISION Rendered on April 29, 2005 Larrimer Larrimer, and Thomas L. Reitz, for relator.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
Vorys Sater Seymour and Pease, Robert A. Minor and Gina R. Russo, for respondent Honda of America Mfg., Inc.
IN MANDAMUS
 {¶ 20} In this original action, relator, Jarrod C. Bishop, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order to the extent that it denies R.C.4123.56(B) wage loss compensation beginning August 1, 2002, and to enter an amended order granting working wage loss compensation beginning August 1, 2002.
Findings of Fact:
 {¶ 21} 1. On April 30, 2001, relator sustained an industrial injury while employed as a "production associate" for respondent Honda of America Mfg., Inc. ("Honda"), a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for: "sprain of neck; bilateral bicipital tenosynovitis; sprain of chest (NEC)," and is assigned claim number 01-844372.
 {¶ 22} 2. Relator's average weekly wage ("AWW") based on his earnings at Honda during the year prior to the date of injury is set at $940.91. Based on a 52-week work year, relator earned approximately $48,927 at Honda during the year prior to the date of his injury ($940.91 × 52 = $48,927).
 {¶ 23} 3. Relator received temporary total disability ("TTD") compensation from Honda until May 2, 2002, when the commission determined that the industrial injury had reached maximum medical improvement ("MMI").
 {¶ 24} 4. At the time the industrial injury was determined to be at MMI, relator advised Honda that he was available for light-duty work; however, Honda was unable to meet relator's medical restrictions. Relator registered with the Ohio Bureau of Employment Services (now Ohio Department of Job and Family Services) and received unemployment compensation from May 2002 through July 30, 2002.
 {¶ 25} 5. On August 1, 2002, relator began employment as a car salesman for Nelson Auto Group ("Nelson Auto") in Belllefontaine, Ohio. Relator worked for Nelson Auto through December 24, 2002, during which time he earned $14,037.15 in sales commissions. Honda calculates relator's AWW during this period of employment at Nelson Auto at $643.90.
 {¶ 26} 6. Dissatisfied with his commission earnings at Nelson Auto, relator resigned his employment there at the end of 2002 and began employment as a car salesman at Steve Austin Auto Group ("Austin Auto"), on January 2, 2003.
 {¶ 27} 7. Relator worked for Austin Auto until June 19, 2003 on a commission basis. He earned $12,726 during this time. Honda calculates relator's AWW for the period of employment at Austin Auto at $531.75.
 {¶ 28} 8. On June 20, 2003, relator retuned to Nelson Auto as a car salesman. According to his affidavit, by April 2004 relator's commission earnings exceeded his earnings at Honda.
 {¶ 29} 9. On October 3, 2003, relator filed an application for wage loss compensation.
 {¶ 30} 10. Relator concedes that he did not conduct a job search for work comparable in pay to his job at Honda since he began employment as a car salesmen with Nelson Auto on August 1, 2002.
 {¶ 31} 11. Following a December 29, 2003 hearing, a district hearing officer ("DHO") issued an order awarding wage loss compensation beginning May 3, 2002. Recognizing that relator's earnings as a car salesman were much less than his earnings at Honda, the DHO, nevertheless, found that relator was not required to seek "alternative employment." The DHO cited to State ex rel. Brinkman v. Indus. Comm. (1999), 87 Ohio St.3d 171 andState ex rel. Ameen v. Indus. Comm., 100 Ohio St.3d 161, 2003-Ohio-5362, to support his decision.
 {¶ 32} 12. Honda administratively appealed the DHO order of December 29, 2003.
 {¶ 33} 13. Following a February 4, 2004 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order states:
* * * Having only a high school degree and prior work experience as a heavy equipment operator, laborer and production worker (all of which are beyond his physical restrictions), it is found that the claimant's acceptance [of] employment as a car salesman was a reasonable effort to re-enter the work force. After one year, the claimant was approached by a neighboring car dealership with an offer for a better paying job that included the possibility for advancement and financial incentives.
Since he began working at Nelson Auto, the claimant has been accepted by OSU in Bellefontaine, where he intends to major in Business Administration when he begins school in the spring. The claimant expects to benefit professionally from his college experience, although his current employer has made no promises.
The claimant's income is dependent upon the number of new and used cars he sells. His apparent success as a car salesman is reflected in his bonus of $300.00 that he earned by his superior sales record from October to December 2003. He become [sic] a "Certified Chrysler Salesman" after passing a course that was paid by the employer. Such certification guarantees the claimant a minimum fee of $150 per car sale, as opposed to a $100 minimum that applies to non-certified salesman. The claimant testified that he works between 50 to 60 hours a week, depending upon whether he works both weekend days and/or whether he needs to stay late to close a deal. Finally, the claimant testified that he recently interviewed for a position as a salesman with an RV dealership. If hired, he would earn a salary of more than $70,000.00, an amount that far exceeds his yearly earnings at Honda.
The employer argues that by accepting a job as a car salesman, the claimant voluntarily restricted his income, thereby requiring him to continue to seek comparably paying work, which he has not done. Specifically, while working at Honda, the claimant earned approximately $48,000.00. By contrast, his recent yearly earnings total only $28,000, and his job requires him to work more than 40 hours per week. The claimant admits that he has not specifically tried to find a higher paying job.
Although there is a striking disparity in the claimant's earnings (particularly if one considers the rate of his hourly wage), it is found that income alone is not determinative of the claimant's entitlement to wage loss compensation. The employer's argument is rejected in this case, based strictly upon the specific circumstances of the claimant's re-employment efforts. It is found that while performing a job that requires him to work overtime, he has made bona fide efforts to mitigate the employer's damages.
First, considering the claimant's educational background and work history (that was limited to physically demanding employment), it is found that his new profession as a car salesman was reasonable. Particularly significant is the claimant's subsequent efforts to improve his employment options and increase his income. These efforts include: (1) switching jobs to work with a higher paying employer, (2) obtaining certification as a Chrysler salesman, (3) pursuing a college education, (4) working well beyond forty hours per week on a regular basis, and (5) obtaining a bonus for a period of high sales. The claimant continues to interview for higher paying jobs within his new field of car sales.
It is found that the general purpose of wage loss compensation, i.e., to supplement a claimant's earnings during a period when he suffers diminished earnings due to his need to find new employment that is consistent with the physical restrictions caused by his injury, clearly applies to this claimant's circumstances.
 {¶ 34} 14. Relator administratively appealed the SHO order of February 4, 2004 to the commission. The commission elected to have the appeal heard by a deputy. Following a May 12, 2004 hearing, the deputy issued an order, approved by the commission, that vacates the SHO's order and denies working wage loss compensation for the period that relator was employed as a car salesman. The deputy's order states:
It is the decision of the Deputy to grant nonworking wage loss from 07/01/2002 through 07/31/2002.
The injured worker testified that he has a high school education and has worked on a farm and for Honda. He further testified that once his temporary total disability benefits were terminated he sought lighter duty work at Honda. He sought unemployment compensation, contacted OBES, and started a job search with other employers at the beginning of July 2002 when he was told by the employer that they had no light duty work available. Within one month the injured worker was able to find alternative employment. In light of the fact the injured worker has no specialized education and only a limited work history, his ability to find new employment within such a short time period of time is found to demonstrate a good faith job search.
This decision is also based on the 05/03/2002 and 07/18/2002 medical statements from Dr. Berman. These reports provide the physical restrictions caused by the allowed injuries. The employer did not contest the injured worker's inability to return to his former position at Honda due to the allowed conditions.
It is the decision of the Deputy to deny working wage loss from 08/01/2002 through 06/18/2003. This decision is based on the lack of any evidence of a good faith job search for comparably paying work.
While O.R.C. 4123.56 allows for the payment of wage loss, OAC 4125-1-01(D) gives the requirements that must be met in order to receive such benefits. OAC 4125-1-01(D) states the injured worker has the burden of proving entitlement to wage loss benefits. A party who claims that the injured worker has not met his burden of poof is not required to produce evidence to support that assertion. Section 4125-1-01(D)(1)(c) states that a good faith job search for comparably paying work is required of those seeking both nonworking and working wage loss who have not returned to comparably paying work. A good faith effort requires a consistent and sincere effort to obtain suitable employment that will eliminate the wageloss. Comparably paying work is defined under OAC 4125-1-01(A)(8) as employment in which the injured worker's weekly rate of pay is equal to or greater than the average weekly wage the injured worker made in his former job.
The average weekly wage in this claim has been set at $940.91. This equates to a yearly salary of $48,927. The 04/04/2004 letter from the injured worker's counsel states that over the 59 weeks at issue, the injured worker averaged $444.40 dollars a week, or a total salary of $26,219.58. Clearly an average weekly wage of $444.40, and a total salary of $26,219.58, is not equal to or greater than the average of $444.40 and a total of $48,927 made at the former job. On this basis the injured worker's jobs over the period of 08/01/2002 through 06/18/2003 are not found to be comparably paying work. Therefore, the rules required an ongoing job search over this period for comparably paying work. [Sic.]
There is no evidence that the injured worker engaged in any job search from 08/01/2002 through 06/18/2003. The injured worker did not testify that he engaged in any job search over this period.
The injured worker's argument that working longer hours, attending work related seminars and participating in approximately two hours of online training a week equates to a job search for comparably paying work is not found persuasive. A job search involves going out and contacting other prospective employer's to see if they have higher paying work available, not doing on the job training with the current employer, or working longer hours. While these may be factors effecting what is a reasonable amount of time spent in a good faith job search, they are not a job search.
The case of State ex rel. Brinkman v. Indus. Comm. (1999),87 Ohio St.3d 171, is not found to apply as it involves a period of wage loss that preceded the effective date of OAC Rule 4125-1. Therefore, the requirement for an ongoing job search for comparably paying work in order to receive working wage loss was not present at that time.
Further, in Brinkman the Ohio Supreme Court held that an injured worker who took a part-time position did not need to engage in a job search when the position had job security and the potential to lead to full-time work that would be comparably paying. In the present case the injured worker was working full-time. Yet, in the period in question he made only a little more than half of what he last made at Honda. It was not until he had a change of employers on 06/19/2003 that he was able to obtain comparably paying work.
The case of State ex rel. Ameen v. Indus. Comm. (2003),100 Ohio St.3d 161, is also not found to apply. In Ameen the injured worker went through four years of college to obtain a degree in a new field with a future, expectation of raises, and potential for advancement. Further, the teaching position the injured worker accepted paid nearly as much as her former job.
In the present case the injured worker has not gone through four years of college and obtained a degree in a new field. While the injured worker has attended seminars and done on the job training, this is fairly common and clearly does not equate to obtaining a four year college degree, nor does it provide the future, potential for advancement or expectations of raises that come with a college degree.
In this case the injured worker has worked as a car salesman. His 04/07/2004 affidavit indicates he has been paid on commission. Therefore, his income was based on the number of cars he sold, not a regular salary with potential raises. There is also no evidence showing a potential for advancement. (The injured worker testified, contrary to his 04[/]07/2004 affidavit, that he was not told he would be offered a management position at Steve Austin Group when he went there in January 2003).
Further, in Ameen the injured worker took a job that paid nearly as much as her former employment. In this case the injured worker's jobs paid only a little more than half of his former employment. There is no evidence that had he not switched employer's on 06/19/2003 his income would have increased anytime soon to the point it was comparably paying work.
Finally, in Ameen the court was looking at the period of time after the injured worker had completed her training and had obtained a comparably paying job utilizing that training. Ameen did not deal with the period of time the injured worker was getting her education and training. The present case involves the period of time during which the injured worker was doing his training, through seminars and on the job training.
There is no evidence in this case that the injured worker had sufficient wage and advancement expectations, or was investing so much time and cost in training, that leaving the occupation of car salesman would not have been justified had he engaged in a job search and found a higher paying job in a different field. While the injured worker is commended for what he has achieved, it is not found to override the rules and the requirement of a job search for comparably paying work.
(Emphasis sic.)
 {¶ 35} 15. Prior to the deputy's hearing, relator submitted his affidavit, executed April 7, 2004, stating:
 {¶ 36} Because of the shoulder disability in my claim I was not able to continue my regular employment with Honda. During my period of disability I had numerous contacts with the company requesting alternative light duty work. Unfortunately, Honda was not able to accommodate the work restrictions established both by my doctor and their doctor, and no alternative light duty work was made available.
 {¶ 37} My temporary total disability benefits were terminated in May of 2002, when it was determined that I had reached maximum medical improvement. At that time, I still advised Honda that I was available for light duty work, but no alternative work was available. I immediately registered with the Unemployment Office and received unemployment benefits from May of 2002 through 7-30-02.
 {¶ 38} Beginning 8-1-02, I was able to find employment with the Nelson Auto Group in Bellefontaine, Ohio. I was employed as a car salesman. This was an entirely new career for me and involved a great deal of learning of new technical information. My earnings were based on a commission basis and they are reflected on the check stubs that I have submitted for consideration with this affidavit.
 {¶ 39} My first period of employment with Nelson Auto Group continued from 8-1-02 through 12-24-02. During this time my earnings did not progress as much as I had expected and I investigated other employment opportunities with a competitor, the Steve Austin Auto Group. As such, I resigned employment at Nelson Auto Group at the end of 2002 and began working for the Steve Austin Auto Group effective 1-2-03. I took this new position of employment because in addition to promised increased business as a commission salesman I was also promised use of a demo car and promised a management position that was to open up in the future.
 {¶ 40} 16. On July 23, 2004, relator, Jarrod C. Bishop, filed this mandamus action.
Conclusions of Law:
 {¶ 41} In denying working wage loss compensation during the time relator was employed full time as a car salesman, the commission deputy held that the Brinkman and Ameen cases do not support relator's claim for compensation. Rather, the deputy held that relator's failure to conduct a job search during his employment as a car salesman precluded wage loss compensation as a matter of law.
 {¶ 42} The deputy's holding that relator was required to pursue a job search for work comparable in pay to his former position of employment at Honda while he was employed full time as a car salesman constitutes a mistake of law and a misapplication of the holdings in Brinkman andAmeen. Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 43} Effective May 15, 1997, the commission promulgated new rules applicable to the adjudication of wage loss applications. Ohio Adm. Code4125-1-01(D)(1)(c) states:
A good faith effort to search for suitable employment which is comparably paying work is required of those seeking nonworking wage loss and of those seeking working-wage loss who have not returned to suitable employment which is comparably paying work[.] * * * A good faith effort necessitates the claimant's consistent, sincere, and best attempts to obtain suitable employment that will eliminate the wage loss. * * *
 {¶ 44} Ohio Adm. Code 4125-1-01(D)(1)(c)(v)(a) sets forth one of the factors the commission must consider in determining whether the wage loss claimant has conducted a good-faith job search:
The amount of time devoted to making prospective employer contacts during the period for which working wage loss is sought as well as the number of hours spent working, for a claimant seeking any amount of working wage loss[.] * * *
 {¶ 45} In the Brinkman case, William A. Brinkman was a Columbus Police Officer who sustained multiple injuries in a 1994 work-related car accident. Examining doctors agreed that Brinkman could not return to his former position of employment and disability retirement was granted. Following his retirement, Brinkman eventually found part-time employment paying $20 per hour at Anheuser Busch, Inc. ("Busch"). Busch told Brinkman that part-time workers were given preference for full-time positions as they became available. Brinkman applied for wage loss compensation which the commission denied. The Brinkman court granted a writ of mandamus explaining:
Despite the laudable goals of wage-loss compensation, there is a heightened potential for abuse whenever weekly compensation and wages are concurrently permitted. In response to this susceptibility, certain post-injury employment is more carefully scrutinized. Among these are part-time and self-employment. Described generically as voluntary limitations of income, these two categories are examined to ensure that wage-loss compensation is not subsidizing speculative business ventures or life-style choices. * * *
* * *
The commission also characterized claimant's perceived income limitation as voluntary because claimant did not continue to look for full-time work after getting the job at Busch. We have never specifically addressed the question of continuing a full-time job search after acquisition of part-time work. We find particularly appealing Florida's approach to this question due to its judiciary's balance between the normal part-time concerns and economic reality.
In Stahl v. Southeastern X-Ray (Fla.App. 1984), 447 So.2d 399, the former employer alleged that claimant's failure to look for a better-paying job after accepting other minimum-wage employment constituted a voluntary income limitation. The court disagreed, writing:
"Whether the acceptance of a particular job with lower earnings amounts to voluntary limitation should be determined based on the enumerated factors [physical impairment, age, industrial history, training and education, motivation, work experience, work record, diligence and availability of jobs] and not based simply on a requirement for continued diligent search by claimant after completion of his normal daily work schedule." Id. at 401.
Rather than focusing simply on income, the Florida court viewed the claimant's employment situation broadly. Within the first three months of work, the claimant received a forty cent per hour raise and was given increased responsibility. When asked why he had stopped looking for other work, claimant responded that "`[m]y boss has indicated that I have a future there, so I feel that I have a good job right now and it would be silly for me to leave a good thing.'" Id. at 402. The court agreed, concluding that "[t]he deputy's order would compel claimant to forfeit any present or future commitment to a full-time job which appears to be appropriate in all ways other than presently diminished earnings." Id.
In this case, the commission is also asking the claimant to "leave a good thing." Stahl is admittedly distinguishable in that post-injury employment was full-time, not part-time, but whether that does or should excuse a broader-based analysis is questionable. Wage-loss compensation is not forever. It ends after two hundred weeks. R.C. 4123.56(B). Thus, when a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life — long after wage-loss compensation has expired.
Id. at 173-174.
 {¶ 46} It should be noted that, in Brinkman, two periods of wage loss were at issue. Both periods pre-date May 15, 1997, the effective date of the commission's wage loss rules at issue here. The Brinkman court did not address the applicability of the wage loss rules to the situation at issue.
 {¶ 47} However, in Ameen, a case that applied the Brinkman reasoning, the period of wage loss at issue post-dates May 15, 1997.
 {¶ 48} Jane Ameen sustained an industrial injury on August 22, 1997 while employed as a hospital nurse. She returned to college for a teaching degree. On August 17, 2000, Ameen's TTD compensation was terminated on MMI grounds. The next day, she graduated from college. Ten days later she began teaching for the Warren City School District.
 {¶ 49} Ameen's teaching job paid slightly less than her nursing position, prompting her to move for wage loss compensation. The commission denied that request after concluding that Ameen had voluntarily limited her income. The commission criticized her for not seeking other nursing jobs. The commission found that Ameen had conducted an inadequate search for a nursing position or a comparably paying field. The Ameen court held that the commission had abused its discretion in failing to award wage loss compensation. The Ameen court explained:
* * * In the instant case, the commission felt that claimant had not conducted enough of a job search to demonstrate an injury-induced unavailability for higher-paying employment. Combined with claimant's complete career change, the commission concluded that claimant's job was lifestyle-generated. We disagree.
Employment that coincides with one's interests, desires, or aptitudes is not inherently suspect. The present claimant was permanently disqualified from her former position of employment, so a new career was a logical option, and claimant prepared for one. Claimant's decision to teach rather than to pursue an allied medical career should not, under these circumstances, be viewed unfavorably.
* * *
Requiring this claimant to continue looking for work with the expectation that she will leave her teaching job is inappropriate. SeeBrinkman, 87 Ohio St.3d 171[.] * * * Brinkman's injury forced him from his police officer's job. After a fruitless, full-time job search, he accepted a part-time position that paid $20 an hour and could expand to full-time. The commission denied wage-loss compensation, citing claimant's failure to keep looking for full-time work. We overturned that order, criticizing the commission's narrow analysis. Looking more broadly, we emphasized that wage-loss compensation was statutorily limited to 200 weeks.
"[W]hen a claimant seeks new post-injury employment, contemplation must extend beyond the short term. The job that a claimant takes may have to support that claimant for the rest of his or her life — long after wage-loss compensation has expired." Id. at 174[.] * * *
We cited with approval a Florida case, Stahl v. Southeastern X-Ray
(Fla.App. 1984), 447 So.2d 399, which upheld a claimant's right to wage-loss compensation despite termination of a job search. Stahl's postinjury employment paid less than his former job but showed real promise for advancement. Lauded by his supervisor, he had already received a significant raise despite his short tenure. His boss assured him that he had a future with the company and, considering everything, the claimant concluded — and the court agreed — that it would be foolish to "leave a good thing." Id. at 402.
Applying this reasoning to the current debate, it is equally inappropriate to have expected claimant to decline the teaching job or to continue seeking other work. As previously stated, claimant has a future with the school district. Again, there is job security, the prospect of salary increases, and advancement possibility. And there are other considerations that militate against the commission's determination. Claimant's position is presumably contractual and forecloses the option of leaving for another position on short notice. Equally important are the intangibles. Teaching entails commitment. It is a disservice to the claimant and the administration, faculty, and students who rely upon her to expect her to leave midterm should a better position surface.
Having considered all of these factors, we find that the claimant did not forfeit wage-loss compensation eligibility either by taking the teaching job or by stopping her job search.
Id. at ¶ 10-11, 17-21.
 {¶ 50} Contrary to what the commission held here, it is clear that theBrinkman court's rationale does indeed apply to periods of a wage loss claim post-dating the effective date of the commission's wage loss rules, i.e., Ohio Adm. Code 4125-1. Thus, the deputy's order at issue here contains a clear mistake of law by holding that Brinkman cannot be found applicable to the instant case because the wage loss claim inBrinkman pre-dates the effective date of Ohio Adm. Code 4125-1.
 {¶ 51} The deputy's analysis of the Brinkman and Ameen cases simply fails to recognize the rationale or holdings of those cases. Based on the undisputed facts of this case, Brinkman and Ameen compel this court to issue a writ of mandamus ordering the commission to enter an award of working wage loss compensation for the periods of time relator was employed as a car salesman and sustained a reduction in earnings because his sales commission's fell below his AWW based on his Honda wages.
 {¶ 52} Significantly, there is no evidence that work comparable in pay to the Honda job was available to relator. It is undisputed that relator had only a high school degree at the time of his injury, and that his industrial injury precluded his return to any of the types of jobs he had previously held. The record before this court shows that relator was highly motivated to succeed as a car salesman, a position he had never before held. He worked long hours, well beyond the normal 40 hours per week, and he availed himself of the many opportunities to increase his skills in his new field. As the Ameen court stated, employment that coincides with one's interests, desires, or aptitudes is not inherently suspect.
 {¶ 53} Moreover, relator was eventually able to eliminate his wage loss because he became a successful car salesman. Thus, relator proved that he indeed had made the right choice by sticking with his new career in automobile sales.
 {¶ 54} The deputy's decision here, in effect, asks relator to "leave a good thing." Brinkman, at 174. Clearly, under the undisputed facts here, it was inappropriate for the commission to deny wage loss compensation because relator admitted that he had not looked for other work after he began employment as a car salesman.
 {¶ 55} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate the February 4, 2004 order of its deputy to the extent that working wage loss compensation is denied beginning August 1, 2002, and to enter an amended order granting working wage loss compensation beginning August 1, 2002.
[1] Compare, State ex rel. Honda Transmission Mfg. of America, Inc. v.Indus. Comm. (2002), 95 Ohio St.3d 95, at 96. ("The parties agree that under the facts of this case [i.e., claimant was working as a pizza delivery driver for $5.50 an hour, which was far less than his former wages], claimant was required to make a good-faith job search for employment paying a wage comparable to that at Honda.")