DECISION
{¶ 1} Relator, Jane Ameen, filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to grant her wage-loss compensation for the period from April 6, 2001 through August 22, 2003.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.)
 {¶ 3} No one objected to the magistrate's findings of fact, and we adopt them as our own. Nevertheless, we reiterate briefly those facts most pertinent to our discussion.
 {¶ 4} On January 9, 2001, relator applied for "[p]ayment of working wage loss from 8/23/00 to the present and continuing." Relator attached to that application an October 9, 2000 medical report of a July 21, 2000 medical examination. The commission denied relator's requested payment, and this court also denied relator's request for a writ of mandamus compelling payment. SeeState ex rel. Ameen v. Indus. Comm., Franklin App. No. 02AP-128, 2002-Ohio-6744 ("Ameen I"). The commission and this court concluded that wage-loss compensation should be denied because relator did not seek suitable work that was comparably paying to her former position as a nurse and, instead, pursued a new career as a teacher. Relator's wages as a teacher did not reach parity with her former wages until August 2003.
 {¶ 5} In an October 26, 2003 decision in State ex rel. Ameenv. Indus. Comm., 100 Ohio St.3d 161, 2003-Ohio-5362 ("Ameen II
"), the Ohio Supreme Court granted a writ of mandamus ordering the commission to grant relator's request for wage-loss compensation, finding that relator had not forfeited her wage-loss compensation eligibility by pursuing a teaching career. Specifically, the court held: "Accordingly, the judgment of the court of appeals is reversed, and a writ of mandamus is issued that compels the payment of wage-loss compensation over the period requested." Id. at ¶ 22.
 {¶ 6} In an order issued November 18, 2003, the commission vacated its prior orders. The commission granted relator's January 9, 2001 application and ordered payment of compensation for the period from August 23, 2000 to April 6, 2001, the date of relator's last submitted pay stub. It further ordered that compensation would continue thereafter upon the submission of wage-loss statements and medical proof of ongoing medical restrictions. The order cited Ohio Adm. Code 4125-1-01(C), which requires a claimant to submit proof of permanent injury every 180 days after an "initial application[.]"
 {¶ 7} On December 13, 2004, relator moved for "working wage loss compensation from 04/06/2001 to 08/22/2003." She attached to that motion a July 12, 2001 report by Dr. Zannetti regarding a July 11, 2001 medical examination, and an August 26, 2004 letter from Dr. Zannetti confirming that relator's injuries are permanent. Based on this evidence, a district hearing officer ("DHO") denied compensation for the period from April 6, 2001 to July 11, 2001; granted compensation for the period from July 12, 2001 to February 12, 2002; and denied compensation for the period from February 13, 2002 to August 22, 2003. The DHO denied benefits during the two identified periods "as there is no medical evidence indicating [the relator], in fact, had on-going medical restrictions over said periods." In affirming the DHO's order, a staff hearing officer ("SHO") confirmed that relator had suffered a wage loss for which "compensation is to be paid pursuant to Ohio Administrative Code 4125-1-01 from 7/12/01 to 2/12/02[.]" The full commission denied relator's appeal, and relator thereafter filed this original action.
 {¶ 8} Before the magistrate in this court, relator argued that the Supreme Court's mandate in Ameen II, as well as R.C.4123.56(B), compelled payment of compensation for the period beginning August 23, 2000 and ending August 23, 2003, when she reached parity. In relator's view, she submitted evidence of permanent injury, and no contrary evidence existed.
 {¶ 9} In response, the commission and respondent, Trumbull Memorial Hospital ("employer"), cited to Ohio Adm. Code4125-1-01(C) and (D), which require a claimant to submit supplemental reports concerning permanent restrictions every 180 days and place the burden to produce evidence upon a claimant, respectively. The commission and employer asserted that the July 12, 2001 medical report was sufficient to grant wage-loss compensation for 180 days thereafter, or until February 12, 2002. However, in respondents' view, relator's failure to produce reports for the remaining 180-day time periods supported the commission's denial of additional benefits.
 {¶ 10} The magistrate found that the commission did not abuse its discretion when it denied relator compensation for the entire period of April 6, 2001 to August 22, 2003. The magistrate concluded that the Supreme Court's decision in Ameen II should be read to mean that the commission's rationale for denying compensation was not valid and that wage-loss compensation should be granted. The magistrate looked to the supplemental medical report requirement found in Ohio Adm. Code 4125-1-01(C)(3) and concluded that relator met her burden of submitting supplemental reports to support the permanency of her injuries only for the 180-day period from July 12, 2001 to February 12, 2002.
 {¶ 11} Relator filed an objection to the magistrate's decision, arguing that the commission's denial of benefits conflicts with the Supreme Court's order in Ameen II and that relator should not be required to comply with Ohio Adm. Code4125-1-01(C) retroactively. For the following reasons, we overrule in part and sustain in part relator's objection.
 {¶ 12} We agree with the magistrate's legal conclusion that the Supreme Court's mandate in Ameen II does not compel wage-loss compensation to August 2003 automatically. The application at issue before the court was the January 9, 2001 application, which requested "[p]ayment of working wage-loss from 8/23/00 to the present and continuing" and was supported by pay stubs through April 6, 2001. Therefore, the commission met the court's mandate when it paid benefits through April 6, 2001.
 {¶ 13} The more difficult question, however, is whether the commission abused its discretion when it denied relator's December 2004 request for benefits because relator failed to submit supplemental medical reports every 180 days during 2001, 2002, and 2003. As to that issue, the commission argues here that relator "is correct in asserting she should not have to comply with the 180-day rule when applying for [wage-loss compensation] retroactively[.]" However, the commission also argues that the July 9, 2001 medical report was only valid to show medical restrictions for a 180-day period. Because the commission could not "extend the life of a single medical report" beyond 180 days, relator essentially submitted no evidence for the remaining time periods, and the commission denied additional benefits. The employer likewise argues that the commission properly denied benefits because relator failed to meet the 180-day supplemental medical report requirement in Ohio Adm. Code 4125-1-01(C).
 {¶ 14} Relator urges us to rely on State ex rel. Bowen v. DoIt Best Corp., 101 Ohio St.3d 392, 2004-Ohio-1670 ("Bowen II
"), to find that the 180-day rule is not fatal to her claim; the commission and the employer seek to distinguish Bowen II. InBowen II, the claimant filed a wage-loss application on July 6, 2001, for the period March 12, 2001 to the "present" and supported that application with a June 26, 2001 medical report. See id. at ¶ 3. The claimant filed a second wage-loss application on January 16, 2002, for the period July 15, 2001 to January 10, 2002, and supported that application with the same June 26, 2001 medical report. The commission denied the second application on the grounds that the claimant had failed to meet the 90-day supplemental medical report requirement in Ohio Adm. Code4125-1-01(C)(3) for non-permanent injuries. However, this court and the Supreme Court found that claimant's failure to submit updated reports for the second, retroactive application was not fatal to the claim. The Supreme Court stated:
The purpose of Ohio Adm. Code 4125-1-01(C)(3) is clear in requiring current medical evidence to sustain an ongoing award. As the court of appeals alluded, however, the requirement is more opaque when dealing with a retroactive compensation request, and thus we refuse to disqualify the medical evidence solely on this basis. We agree instead with the court of appeals' conclusion that further consideration of the medical evidence is appropriate, particularly given the district hearing officer's lone citation of a report by a Dr. Reilly, which we cannot find in the record.
Id. at ¶ 24.
 {¶ 15} In the earlier mandamus action before this court, inState ex rel. Bowen v. Do It Best Corp., Franklin App. No. 02AP-890, 2003-Ohio-2943 ("Bowen I"), a magistrate of this court had been more direct:
The "initial application" within the meaning of the rule is the application filed January 16, 2002, which was the subject of [an earlier SHO's order]. The commission did not adjudicate entitlement to wage loss compensation beyond January 10, 2002 which pre-dates the filing of the application. Ohio Adm. Code4125-1-01(C)(3) imposes upon the claimant a requirement to submit a supplemental medical report during the 90-day period following the initial application and for each 90-day period thereafter. Presumably, where the claimant does not seek compensation during the 90-day period following the filing of the application, there can be no requirement that the claimant submit a supplemental medical report following the application.
Obviously, the commission should weigh the medical evidence submitted in support of the wage loss compensation even where the period of the wage loss claim pre-dates the filing of the application. However, the commission cannot reject the medical evidence in that situation by invoking the 90-day rule.
Id. at ¶ 79-80.
 {¶ 16} Here, relator's January 9, 2001 application sought benefits for the period August 23, 2000 "to the present and continuing." Relator's December 13, 2004 application sought benefits for the defined period from April 6, 2001 to August 22, 2003. The employer urges us to characterize relator's January 9, 2001 application as the "initial application" for purposes of Ohio Adm. Code 4125-1-01(C)(3). Because relator failed to supplement her initial application every 180 days, the employer argues, relator's request for benefits must fail. The commission, while also urging us to distinguish Bowen II and affirm the denial of benefits, characterizes relator's application as a second application for retroactive benefits: "This was a retroactive application for wage loss, just as in Bowen."
 {¶ 17} Based on our independent review of the record in this case, we find that any attempt to distinguish relator's December 2004 application from the Bowen claimant's second application would be based purely on semantics. Although relator's initial application sought "continuing" benefits, the commission did not adjudicate the propriety of benefits beyond April 6, 2001. In its November 18, 2003 order, the commission specifically awarded benefits to April 6, 2001, but then imposed the conditions for awarding benefits retroactively for subsequent periods. As with the Bowen claimant's application, relator's second application sought an award of these retroactive benefits, and her failure to submit supplemental medical reports during that time period should not have been fatal to her claim. Therefore, we sustain in part relator's objection to the magistrate's decision.
 {¶ 18} However, having agreed in part with relator's arguments, we nevertheless limit our decision to the unusual facts of this case. We acknowledge the danger of allowing claimants to avoid the time requirements for submitting supplemental medical reports under Ohio Adm. Code 4125-1-01(C)(3) by filing separate, time-specific claims for benefits. Importantly, relator's December 2004 application for retroactive benefits was prompted by an intervening Supreme Court decision awarding benefits "over the period requested" and a commission order that adjudicated benefits to a specific period and then set conditions for adjudication of benefits for subsequent (but by then, retroactive) time periods. These unusual facts call for an unusual result.
 {¶ 19} In Bowen II, the Supreme Court concluded "that further consideration of the medical evidence" was appropriate.Bowen II at ¶ 24. Here, we grant a limited writ and order the commission to weigh the medical evidence relator offered in support of her December 2004 application. In weighing that evidence, the commission may not deny benefits on the basis that relator did not meet the 180-day supplemental medical report requirement of Ohio Adm. Code 4125-1-01(C)(3).
Objection sustained in part and overruled in part, limitedwrit of mandamus granted.
Bryant and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Jane Ameen, : Relator, : :
v. : No. 05AP-507 :
Industrial Commission of Ohio : (REGULAR CALENDAR) and Trumbull Memorial Hospital, : Respondents. : :
 MAGISTRATE'S DECISION Rendered on November 30, 2005 Heller, Maas, Moro Magill Co., L.P.A., and C. DouglasAmes, for relator.
Jim Petro, Attorney General, and Sue A. Zollinger, for respondent Industrial Commission of Ohio.
Stefanski Associates, LLC, and Janice T. O'Halloran, for respondent Trumbull Memorial Hospital.
 IN MANDAMUS {¶ 20} Relator, Jane Ameen, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to grant her wage loss compensation for the entire period from April 6, 2001 through August 22, 2003.
Findings of Fact:
 {¶ 21} 1. Relator sustained a work-related injury while employed as a registered nurse for respondent Trumbull Memorial Hospital ("Trumbull Memorial"), a self-insured employer, and her claim has been allowed as follows: "sprain/strain of the cervical thoracic spinal areas with myofascitis; disc protrusion at C3-4; aggravation of pre-existing spondylosis at C3-4, C4-5, C5-6."
 {¶ 22} 2. From approximately December 29, 1997 to April 15, 1998, relator either worked light-duty at Trumbull Memorial or received temporary total disability ("TTD") compensation.
 {¶ 23} 3. By letter dated April 15, 1998, relator's employment with Trumbull Memorial was terminated.
 {¶ 24} 4. Relator continued to receive TTD compensation beyond her April 15, 1998 termination of employment.
 {¶ 25} 5. After her termination, relator's treating physician, Mark Zannetti, D.C., indicated relator was a candidate for vocational rehabilitation services.
 {¶ 26} 6. Relator received counseling from the Ohio Bureau of Vocational Rehabilitation and ultimately returned to college to pursue a degree in education.
 {¶ 27} 7. Relator was examined by E.A. DeChellis, D.O., who issued a report dated July 5, 2000, indicating that relator could perform her former job duties providing that she refrain from patient transfer. He further opined that relator had reached maximum medical improvement ("MMI") and that further therapy be directed at maintaining her current level of function.
 {¶ 28} 8. Trumbull Memorial filed a motion to terminate relator's TTD compensation in July 2000.
 {¶ 29} 9. Trumbull Memorial's motion was heard before a district hearing officer ("DHO") on August 17, 2000, and resulted in an order terminating relator's TTD compensation effective the date of the hearing based upon the July 5, 2000 report of Dr. DeChellis. The DHO's order was administratively affirmed.
 {¶ 30} 10. In August 2000, relator received a bachelor's degree in education from Youngstown State University and, on August 23, 2000, relator began employment as a teacher for the Warren City School District.
 {¶ 31} 11. On January 9, 2001, relator filed a motion requesting working wage loss compensation from August 23, 2000 to the present and continuing.
 {¶ 32} 12. Following hearings before a DHO and a staff hearing officer ("SHO"), relator's request was denied.
 {¶ 33} 13. Following an August 1, 2001 hearing before the three-member commission, the commission issued an order vacating the SHO's order but denying wage loss compensation on the grounds that relator did not seek suitable work that was comparably paying to her former position of employment and that relator had made a conscious life-style choice to become an educator and had voluntarily limited her income. As such, the commission found that there was no causal connection between relator's industrial injury and her decreased earnings.
 {¶ 34} 14. On February 4, 2002, relator filed a mandamus action in this court, State ex rel. Ameen v. Indus. Comm.,
Franklin App. No. 02AP-128, 2002-Ohio-6744 ("Ameen I"), requesting a writ of mandamus ordering the commission to grant her request for wage loss compensation.
 {¶ 35} 15. This court denied relator's request for a writ of mandamus after finding that the commission did not abuse its discretion by weighing the evidence, rejecting relator's hearing testimony, and rejecting her claim that she had sought comparably paying work. This court noted that the commission had explained its reasons for rejecting relator's testimony by explaining that if relator had gone to college to pursue a teaching career, then it did not follow that once she graduated, she would pursue employment with doctors' offices. Further, the commission noted that relator failed to submit any documentation to support her testimony that she wrote to doctors' offices seeking employment.
 {¶ 36} 16. Relator then filed an appeal to the Supreme Court of Ohio. In State ex rel. Ameen v. Indus. Comm.,100 Ohio St.3d 161, 2003-Ohio-5362 ("Ameen II"), the Supreme Court issued a writ of mandamus for the following reasons: the court noted that relator was permanently disqualified from her former position of employment and that her pursuit of a degree in education was a logical option. Under those circumstances, the court found that her decision to teach rather than pursue an allied medical career should not be viewed unfavorably. Further, the court noted that the commission put relator in a "Catch-22." The court noted that if relator had declined the teaching job and kept looking for a more lucrative job, then she would have been without any wages. The court suspected, however, that the commission would have held her failure to take the teaching job that reduced her wage loss against her. The court concluded that relator used her intellectual abilities that had allowed her to become a nurse and accepted a commensurate academic challenge which led to a new career which was not economically out of line with her former livelihood. Furthermore, the court concluded that there was a degree of job security, the expectation for raises, and the potential for advancement. As such, the Ameen II court granted relator's request for wage loss compensation beginning August 23, 2000 by concluding as follows:
Applying this reasoning to the current debate, it is equally inappropriate to have expected claimant to decline the teaching job or to continue seeking other work. * * * And there are other considerations that militate against the commission's determination. Claimant's position is presumably contractual and forecloses the option of leaving for another position on short notice. Equally important are the intangibles. Teaching entails commitment. It is a disservice to the claimant and the administration, faculty, and students who rely upon her to expect her to leave midterm should a better position surface.
Id. at ¶ 20.
 {¶ 37} 17. Thereafter, by order mailed November 18, 2003, the commission ordered wage loss paid as follows:
Specifically, the Supreme Court directed the payment of wage loss compensation over the period requested, consistent with its option.
Therefore, in accordance with the Writ, it is ordered that the order of the District Hearing Officer dated April 19, 2001, be vacated; the order of the Staff Hearing Officer dated May 31, 2001, be vacated; and the order of the Industrial Commission dated August 1, 2001, be vacated.
In a manner consistent with the Supreme Court's decision and judgment, it is further ordered that the claimant's motion filed January 9, 2001, be granted to the extent that: (1) "working" wage loss compensation is granted from August 23, 2000 through April 6, 2001; and (2) the award is to continue thereafter upon the submission of wage loss statements and medical proof regarding the ongoing status of the medical restrictions causally related to the allowed conditions in the claim, as so required by 4125-1-01(C) of the Ohio Adm. Code, and subject to the provisions of R.C. 4123.56(B).
 {¶ 38} 18. Trumbull Memorial refused to pay relator wage loss compensation from April 6, 2001 to August 22, 2003, the date relator reached parity and no longer suffered a wage loss.
 {¶ 39} 19. On December 13, 2004, relator filed a motion requesting working wage loss compensation from April 6, 2001 to August 22, 2003. Relator submitted the July 12, 2001 report of her treating physician Dr. Zannetti indicating her physical restrictions and further noting that relator's condition was permanent. Relator also attached the August 26, 2004 report of Dr. Zannetti indicating that the restrictions he put on relator are "permanent." (Emphasis sic.) Relator also attached payroll printouts relative to her earnings during the relevant time period.
 {¶ 40} 20. Relator's motion was heard before a DHO on March 4, 2005, and resulted in an order granting her request as follows: the DHO granted her request for working wage loss compensation from July 12, 2001 through February 12, 2002, but denied relator wage loss compensation from April 6 through July 11, 2001, and from February 13, 2002 through August 22, 2003, because "there is no medical evidence indicating that Claimant, in fact, had on-going medical restrictions over said periods." The DHO based the decision on the following evidence:
The Hearing Officer, in making this finding, has relied upon the following evidence.
[One] Dr. Zannetti, Claimant's Physician's C-140 and narrative report dated 08/26/04 indicating Claimant has permanent restrictions.
[Two] Wage loss questionnaire.
[Three] Wage statements.
[Four] Claimant's testimony indicating prior Administrative Orders, as well as Court of Appeals decision dated 12/10/02.
Upon review and analysis of these reports, and take [sic] the allowed conditions into consideration, this finding was made.
 {¶ 41} 21. Relator's appeal was heard before an SHO on February 14, 2005, and resulted in an order affirming the prior DHO order and ordering that working wage loss compensation be paid for the closed period of July 12, 2001 to February 12, 2002, inclusive.
 {¶ 42} 22. Relator's further appeal was refused by order of the commission mailed May 5, 2005.
 {¶ 43} 23. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 44} In this mandamus action, relator asserts that the commission abused its discretion by not following the Supreme Court of Ohio's dictates in Ameen II by not granting her request for working wage loss compensation in its entirety. Relator argues that the court ordered the commission to pay compensation as requested and that since relator requested that the wage loss compensation be paid from August 23, 2000 and continuing that the compensation should have been awarded through August 22, 2003, the date she reached parity in her teaching job.
 {¶ 45} The commission argues that it did not abuse its discretion by denying relator's request for wage loss compensation for the period April 6 to July 11, 2001, and February 13, 2002 through August 22, 2003, as relator failed to submit medical evidence that she continued to be entitled to that compensation. The commission argues that relator simply failed to meet her burden of proof and that the commission was within its discretion to deny her wage loss compensation for those periods of time. For the reasons that follow, this magistrate finds that relator's request for a writ of mandamus should be denied.
 {¶ 46} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State exrel. Lewis v. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 47} It is undisputed that, when an employee sustains a work-related injury, the workers' compensation system has two immediate goals: (1) to return that employee to the workforce as soon as possible; and (2) until then, to lessen the hardship incurred to the employee by lost or reduced wages. As the court noted in Ameen II:
* * * Prior to 1986, for those who had lost earnings due to an inability to return to the former position of employment, TTC was the traditional mainstay. Unfortunately, it did not differentiate between claimant's who could do no work and those who, while unable to resume their prior employment, could do some work. Because alternate employment disqualified claimants for TTC, those in the latter category had little choice but to remain at home in order to preserve TTC eligibility. This defeated a primary workers' compensation objective.
In 1986, the General Assembly resolved this dilemma by approving wage-loss compensation. Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 718, 767. This benefit encourages a return to employment by paying a percentage of the shortfall between a claimant's pre- and postinjury income. * * *
Id. at ¶ 7-8.
 {¶ 48} R.C. 4123.56(B) provides for the payment of wage loss compensation as follows:
Where an employee in a claim allowed under this chapter suffers a wage loss as a result of returning to employment other than the employee's former position of employment or as a result of being unable to find employment consistent with the claimant's physical capabilities, the employee shall receive compensation at sixty-six and two-thirds per cent of the employee's weekly wage loss not to exceed the statewide average weekly wage for a period not to exceed two hundred weeks.
 {¶ 49} In order to receive workers' compensation, a claimant must show not only that a work-related injury arose out of and in the course of employment, but, also, that a direct and proximate causal relationship exists between the injury and the harm or disability. State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452. A wage loss claim has two components: a reduction in wages and a causal relationship between the allowed condition and the wage loss. State ex rel. Watts v. Schottenstein StoresCorp. (1993), 68 Ohio St.3d 118. It is well-settled that a prerequisite that an award to wage loss compensation is proof that the claimant made a good-faith effort to secure comparably paying work but was unable to do so due to the allowed conditions. Furthermore, it is undisputed that the claimant is solely responsible for and bears the burden of producing evidence regarding their entitlement to wage loss compensation.
 {¶ 50} Supplementing R.C. 4123.56 is Ohio Adm. Code Chapter 4125. Specifically, Ohio Adm. Code 4125-1-01(C)(3) provides:
Supplemental medical reports regarding the ongoing status of the medical restrictions causally related to the allowed conditions in the claim must be submitted to the bureau of workers' compensation or the self-insured employer in self-insured claims once during every ninety day period after the initial application, if the restrictions are temporary, or once during every one hundred eighty day period after the initial application, if the medical restrictions are permanent. * * *
 {¶ 51} In this mandamus action, relator argues that she was not required to submit additional medical evidence because her treating physician had indicated that her restrictions were permanent. A plain reading of Ohio Adm. Code 4125-1-01(C)(3) demonstrates otherwise. Inasmuch as relator bore the burden of establishing entitlement to wage loss compensation, in the present case she failed to submit medical evidence establishing her continued entitlement to wage loss compensation. Furthermore, conversely to relator's argument, the Supreme Court's decision inAmeen II did not require the commission to provide relator wage loss compensation through August 22, 2003. At the time of the court's decision, relator had requested wage loss compensation from August 23, 2000 and continuing. When the Supreme Court granted a writ of mandamus, the court was saying that the commission's rationale denying relator wage loss compensation on the basis that she had voluntarily limited her income, was not a valid reason for denying her wage loss compensation and that wage loss compensation should be granted. However, this grant of wage loss compensation did not remove from relator the burden of providing medical evidence of her continuing entitlement to wage loss compensation beyond April 5, 2001. Furthermore, the fact that she requested "ongoing" wage loss compensation likewise did not remove her from the responsibility of submitting additional medical evidence to demonstrate her entitlement to continuing compensation.
 {¶ 52} In the present case, the magistrate finds that relator has not demonstrated that the commission abused its discretion by finding that she failed to comply with Ohio Adm. Code4125-1-01(C)(3) when she did not file medical evidence supporting her continued entitlement to wage loss compensation. As such, it is the magistrate's decision that relator's request for a writ of mandamus should be denied.